134 So.2d 7 (1961)
UNITED ELECTRIC COMPANY and the American Insurance Company, Petitioners,
v.
Sarah J. MYERS and The Florida Industrial Commission, Respondents.
No. 40084.
Supreme Court of Florida.
July 28, 1961.
On Rehearing October 18, 1961.
*8 Monroe E. McDonald, of Sanders, McEwan, Schwarz & Mims, Orlando, for petitioners.
Berson, Barnes & Inman, Orlando, Burnis T. Coleman and Paul E. Speh, Tallahassee, for respondents.
O'CONNELL, Justice.
Sarah J. Myers, the claimant below and respondent here, filed a claim for death benefits against United Electric Co., the employer of her deceased husband, William B. Myers.
The deputy commissioner found that the decedent had, on November 20, 1959, suffered a compensable accident when a pike pole struck him on the head; such accident materially aggravated a pre-existing tumor in decedent's brain, which tumor was quiescent and non-disabling prior to the accident; and that the combined effects of the tumor and the aggravation resulted in deceased's disability and subsequent death on January 28, 1960.
The deputy commissioner awarded the claimant-widow full death benefits. He ordered the employer-carrier to pay all hospital and medical expenses for treatment of the decedent's compensable injury, reimburse the claimant widow for funeral expenses, pay the costs of the proceeding, and to pay attorney's fees in the sum of $3,500.
The full commission affirmed the order of the deputy and the employer and carrier brought this petition for certiorari contending that: (1) there was no competent substantial evidence to support either the deputy's finding that the decedent suffered a compensable injury or his finding that the decedent's death was caused, accelerated or contributed to by any such accident; (2) if decedent's pre-existing tumorous condition was only aggravated and death accelerated by such accident the employer-carrier can be required to pay only for acceleration of death reasonably attributable to the accident; (3) it was error to order the employer-carrier to pay hospital and medical expenses because the decedent never requested the employer to furnish same as required by Sec. 440.13, F.S.A.; and (4) that there was no competent substantial evidence to support an award of $3,500 attorneys' fees.
The evidence as to the occurrence of a compensable injury is simple and we find that it was adequate to support the deputy's finding thereon.
The evidence showed that decedent while assisting in the installation of a 35 to 40 foot pole was struck on the left side of the head, shoulder and hand by a falling pike pole. The pike pole was being used to steady the larger pole while it was being set into position.
A written statement given by decedent detailing the accident was admitted into evidence. One of decedent's fellow workers testified that he was working by decedent's side; he was looking down when the pike pole fell and did not see it strike decedent; when it fell he looked up and saw that the fallen pike pole was resting across decedent's hand on the pike pole that he and decedent were holding; he asked decedent if he was hurt and decedent replied "No I am all right, it hit me across the head"; and that the falling pole had cracked a plastic shield on one of decedent's fingers.
The decedent's written statement as corroborated by the above testimony was admissible in evidence under Sec. 440.29(1), F.S.A., and the two together were adequate to support the deputy's finding that there was a compensable accident.
The question of the causal connection between decedent's death and the accident and related questions are more involved.
The injury to decedent did not knock him down or cause him to lose consciousness. Nor did he report it to his employer for *9 several weeks. He continued working the remainder of the day on which the accident occurred and for several days thereafter, the number not being clear in the evidence.
Six days after the accident, while at home, decedent suffered an attack of some nature during which he evidenced inability to talk, weakness of the muscles of the mouth accompanied by drooling, twitching of the left eye, and incoordination.
A physician was called and after examination he placed decedent in a hospital for observation.
This physician found no evidence of any contusion, abrasion or injury to decedent's head, nor did decedent mention to him the pike pole striking him six days earlier, although he did mention it to one of his doctors at a later date.
Decedent improved in the hospital and was released with instructions to take certain medications designed to aid circulation of blood to the brain.
Decedent was thereafter hospitalized twice more. He died in the hospital on January 28, 1960.
During the interim between the first entry into the hospital and his death various tests were made on decedent in an effort to determine the cause of his condition. It was determined that decedent probably had a space occupying mass in the right parietal region of his brain. A craniotomy was performed. A large tumor was found in the right temporal parietal region of the brain. The tumor had infiltrated the brain and therefore was not of the sort that could be removed. The decedent died shortly after this operation.
Dr. Hoff, who examined decedent, ordered the various tests, and performed the craniotomy, testified that the immediate cause of his death was "the tumor or the swelling within the tumor." The deputy, as above stated, found that the combined effects of the pre-existing tumor and the aggravation thereof by the accident involved here resulted in decedent's death.
There was competent evidence in the record through the testimony of Dr. Hoff, a neurosurgeon, to support the deputy's finding that there was a causal relationship between decedent's death and the accident.
Dr. Hoff testified that under the facts presented, i.e. decedent's having no prior history of symptoms of brain tumor, a blow to the head, followed within six days by an attack with the symptoms above recited and subsequent similar symptoms not recited herein, the blow to the head "played a role in the aggravation" of his symptoms but he said he could not tell how great a role. He explained that while the symptoms were caused by the tumor "* * * the precipitation and aggravation at that time I think, rather, I believe the trauma played a role in bringing them on at that time, I don't believe I could say more than that." He also testified that "* * * the problem of the nature which he (decedent) had one would normally anticipate that at some time in the future he would have developed symptoms * * *."
At the hearing before the deputy Dr. Hoff reaffirmed statements made in a deposition prior to trial to the effect that there was no "* * * definite evidence that the growth of the tumor was necessarily expedited in its development by the trauma."
The deputy was obviously concerned with the effect of Dr. Hoff's testimony for he asked him to explain his statements that while the growth of the tumor was not necessarily aggravated or expedited by the trauma, the trauma could be said, with reasonable medical certainty, to be the cause of the symptoms.
In response to the deputy's questions Dr. Hoff again explained that there was no definite medical proof that the trauma brought about an increase in speed of the growth of the tumor, but that the "* * * trauma may have precipitated the onset of his symptoms, as a result of that I interpreted *10 it in my own mind that it played a role in aggravating the symptoms in bringing them about so that they came about sooner." The doctor continued saying again "Having a tumor of this nature in the area which it was we would normally anticipate that he would develop symptoms from this tumor as it would grow and reach sufficient size to cause the symptoms and since he had no symptoms before (the accident) I would consider that the trauma played a role in starting of them at that time. * *"
We think Dr. Hoff's testimony and the evidence in this cause present a logical sequence of events which adequately support the deputy's conclusion that the injury was causally related to the precipitation or acceleration of the symptoms of the pre-existing tumor in decedent's brain. It was the burden of the employer-carrier to come forth and show that another cause was more logical and consonant with reason if they would defeat the claim that the injury and result here were unconnected. See Johnson v. Dicks, Fla. 1955, 76 So.2d 657, 661; Johnson v. Koffee Kettle Restaurant, Fla. 1961, 125 So.2d 297; and Ortkiese v. Clarson & Ewell Engineering, Fla. 1961, 126 So.2d 556.
In its totality it seems clear to us that the injury merely accelerated decedent's death rather than causing it directly. The deputy seems to have arrived at the same conclusion for he found that it was the tumor and its aggravation by the accident which resulted in decedent's demise.
This makes real the employer-carrier's contention that they should not be held liable for full death benefits, but only for that portion due to the acceleration of death. In other words they contend that apportionment was in order. We agree.
The employer-carrier base their contention on the clear mandate of Sec. 440.02(19), F.S.A. which reads:
"* * * Where a pre-existing disease is accelerated or aggravated by accident arising out of and in the course of the employment, only acceleration of death or the acceleration or agravation of disability reasonably attributable to the accident shall be compensable." (Emphasis added.)
Sec. 440.16, F.S.A. provides for death benefits where the employee's death occurs within one year after the accident or follows continuous disability and results from the accident within five years thereafter. The provisions of this section must be considered with the above quoted provisions of Sec. 440.02(19) where an accident accelerates death due to a pre-existing disease.
In this case the deputy awarded the claimant-widow maximum benefits. Nothing in his order indicates that he gave any consideration to the statutory dictate to apportion the award.
This Court has previously committed itself to the rule that apportionment should be made where a disability results from an injury which aggravates a pre-existing non-disabling disease or condition. See Czepial v. Krohne Roofing Co., Fla. 1957, 93 So.2d 84, 86 where the claimant's pre-existing tubercular condition was found to have been aggravated. This Court remanded the cause with directions that the deputy make an appropriate finding, saying the claimant was entitled "to an award of compensation for that proportion of the acceleration or aggravation of his tubercular condition that is reasonably attributable" to the accident.
In Padrick Chevrolet Co. v. Crosby, Fla. 1954, 75 So.2d 762, this Court remanded the cause for apportionment under Sec. 440.02(19). In this last case the pre-existing condition was a non-disabling hernia.
The statute and these cases clearly require apportionment when the aggravation of the pre-existing disease or condition causes acceleration of death as in this case.
*11 Admittedly under the evidence found in this case it may be difficult to determine to what extent death was accelerated by the injury. Nevertheless, it must be done and it must be done by the deputy on evidence presented to him at a hearing. This cause must be remanded for that purpose.
The employer-carrier next contend that the deputy erred in awarding hospital and medical expenses because the decedent did not comply with Sec. 440.13, F.S.A.
On the record before us this contention is correct.
Sec. 440.13 requires the employer to furnish medical attention but also requires that the employee request same of the employer before the employee can provide these services for himself at the expense of the employer. The statute also provides that the employer shall not be responsible for such expenses unless the physician furnishing the treatment files reports with the employer and commission as prescribed in the statute. There is a proviso which allows the commission to excuse the failure to file such reports for good cause.
Our Workmen's Compensation Act must be construed liberally in favor of the claimant. There may be circumstances under which a claimant could be excused for his failure to request his employer to furnish him with medical attention.
In the record before us no attempt is made by the claimant widow to excuse the failure of decedent to request medical attention of the employer or to excuse the failure of the physicians to file reports. Nor did the deputy consider the question in his order.
In her brief the claimant widow makes no answer to this contention.
The part of the deputy's order requiring the employer-carrier to pay hospital and medical expenses is incorrect. On remand the deputy should consider the matter in light of what we have said here.
The last question relates to the award of attorney's fees.
While the award is larger than we would have ordered on the facts it is supported by the evidence and we cannot disturb it for that reason.
However, since this cause must be considered again by the deputy for the purpose of apportioning the benefits under Sec. 440.19(2) he should also reconsider the amount of attorney's fees which would be proper in view of such apportionment.
For the reasons above expressed the writ of certiorari is granted and the order of the Industrial Commission is quashed with direction that the cause be remanded to the deputy commissioner for further proceedings consistent with this opinion.
It is so ordered.
THOMAS, Acting C.J., and TERRELL, HOBSON and THORNAL, JJ., concur.

On Rehearing Granted.
PER CURIAM.
The claimant-respondent, Sarah J. Myers, in a petition for rehearing contends that by quashing the order of the Full Commission this Court has failed to provide for preservation of payment to her of the sum of $290 for services of her attorneys before the Full Commission as ordered by it and that this Court failed to award attorneys' fees for the services of her attorneys before this Court.
On further consideration of the allowance of attorneys' fees we have concluded that the circumstances of this case and the nature of our decision justify that the claimant be awarded compensation for the services before the Full Commission and before this Court.
Accordingly our opinion heretofore rendered in this cause is hereby modified in that the writ of certiorari is denied as to that portion of the order of the Full Commission *12 awarding $290 as fees for the services of the claimant's attorneys.
It is also ordered that the petitioners United Electric Company and The American Insurance Company pay the claimant's attorneys the sum of $350 for their services in this Court in this cause.
It is so ordered.
THOMAS, Acting C.J., and TERRELL, HOBSON, THORNAL and O'CONNELL, JJ., concur.