THOMAS, Justice.
William L. Murray complains of an order of the Florida Industrial Commission which reversed an order of the deputy commissioner, awarding him compensation, and directed the dismissal of the claim.
The petitioner was in the employ of the City of St. Petersburg from June 19S3 until July 1959 as a watchman at a garbage dump.
In his original application he claimed compensation for injury from an occupational disease, Sec. 440.151 Workmen’s Compensation Law, then amended the application by characterizing the claim as one for injury arising out of and in the course of his employment, Sec. 440.02(19) of that law.
When the. petitioner began his work for the city he was found to be blind in one eye and to have poor vision in the other, and, further, to possess a frail physique with barrel chest “and doubtless old, chronic pulmonary disease,” to quote from the deputy commissioner’s order. For several years he had been receiving a non-service-connected disability pension pursuant to a rating of 100% disability by the Veterans Administration which is the prerequisite condition for such a pension. U.S.C.A., Title 38, § 502(a) (1). Originally his disability, as described by .a representative of the Administration, was a combination of defective ■eyesight and “bronchial asthma.” Eventually, about two years before his employment by the city, his ailment had been diagnosed in the clinical record of the Administration •as emphysema.
Doubtless the work assigned to the petitioner was not such as would be beneficial because he was intermittently exposed to the smoke of burning refuse and the dust raised by bulldozers when the smoldering trash was covered. The extent to which the air around the dump was polluted became so •great that the dump was closed in 1958 because of public clamor against the offensive noxious fumes emanating from the burning refuse. Even so, the claimant continued in the employ of the city from 1953 until the closing of the dump in 1958, and remained thereafter until 31 July 1959 as a watchman to prevent any further deposits of trash at the place. The latter date is significant and will be mentioned later because it matched the 65th anniversary of the petitioner’s birthday and was, too, the date selected by the deputy commissioner as the one from which compensation for total disability should be computed.
It is important to record that the petitioner’s service to the city was satisfactory as was evidenced by the fact that during it he was granted six raises in pay.
The deputy commissioner entered an order that was meticulous and exhaustive, which we proceed now further to analyze. He found that the petitioner, despite the smoke and dust to which he was subjected, lost little time from his job although he experienced “serious difficulty” in 1955 or 1956 and that his health was affected until the end of his service, but diminished when the burning of rubbish ceased in October 1958. The claimant missed five days from work because of illness from 1953 to 1957 and 33 days between September 1957 and July 1959.
The deputy referred to an examination of petitioner by a physician, nine months after the petitioner had been dismissed, who diagnosed the illness as emphysema, an overtension and inelasticity of the lungs, a condition which would be aggravated by inhaling smoke. This doctor opined that the petitioner was then 100% disabled. Another doctor expressed the same opinion except that he considered the petitioner totally disabled when he examined him the year before.
The deputy commissioner alluded also to the testimony of a physician who had examined the petitioner in 1953 and found he was handicapped by the blindness, total in one eye and partial in the other and “chronic pulmonary disease.” The doctor added that the petitioner could do work of some kind; *321 that the emphysema could get worse by the passage of time and that smoke could aggravate the disease as the claimant was sensitive to any respiratory irritant.
Based on the factual situation we have sketched, the deputy commissioner held at the outset that the petitioner sustained an accident arising out of and in the course of his employment because “throughout” his service with the city he had been exposed to smoke and dust which aggravated the emphysema from which he was suffering. This phase of the finding clearly related to Sec. 440.02(19) where “accident” is defined as “only an unexpected or unusual event or result, happening suddenly." (Italics supplied.) Before passing to the next finding of the deputy commissioner we elaborate on the quotation by referring to the concluding sentence of the section in respect of aggravation or acceleration of a preexisting disease. It is provided that where there is such aggravation or acceleration by the “accident” only the aggravation or acceleration reasonably attributable to the “accident” shall be compensable.
In his next finding the deputy commented that the exposure to smoke and dust was a risk incident to the employment and materially “in excess of that to which the people of St. Petersburg are normally or commonly exposed.” The language we have quoted inclines us to the belief that the two sections, Secs. 440.02(19) and 440.151 were being blended because of the language in paragraph (2) of the latter defining an occupational disease as one peculiar to the employment and one to which the general public is not exposed. However, because of his emphasis on the aggravation of a pre-existing condition we assume that the deputy was proceeding principally on the theory that the claimant was entitled to benefits under the former section.
The deputy then indulged in some reasoning which we have difficulty following. He drew the conclusion that although the claimant was handicapped before being employed, he was not incapacitated because he did actually work for the city for six years and that this capacity to earn, which eclipsed his former disability, was wholly destroyed by breathing dust and smoke from the rubbish heap. Stated otherwise, he reasoned that although the claimant was 100% disabled for the purpose of obtaining a pension from the Veterans Administration, his disability was dispelled by the very fact of employment by the city inasmuch as the Workmen’s Compensation Law, Sec. 440.02(9) defines disability as “incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury.” The deputy applied this in such a way that once the claimant began work he was not disabled despite his obvious condition, and when he ceased to be employed by the city he was 100% disabled. It seems to us the construction is strained and in this regard we refer to the introductory sentence of Sec. 440.02, supra, where it is specified that the definitions shall have the meanings ascribed to them “unless the context clearly requires otherwise.” The conclusion was, therefore, that inasmuch as the claimant started with a disability of zero and ended with a disability of 100%, apportionment was “unnecessary as well as impossible.” We pose a rhetorical question: If a worker, simply because he gets a job, has for that reason no disability whatever, when would there ever be a situation calling for apportionment?
In all, the claimant was declared totally permanently disabled because of an unexpected or unusual event or result happening suddenly although the “accident” was also described as the aggravation of the original condition for a period of six years.
The Full Commission noted that although the city dump was closed 1 October 1958 the claimant continued to work until he reached the age of 65 on 31 July of the following year and that his claim was not filed until 16 March 1960. The Commission found “absolutely no evidence” indicating any increase in claimant’s disability after 1 *322 October 1958, or, for that matter, that his disease had worsened after 15 August 1955 when his chest was x-rayed at the behest of the Veterans Administration. The Commission commented that the reason for, the termination of the claimant’s employment was his age rather than the state of his health. But the Commission stated also that in conformance to a policy of the city that employees had to terminate their employment upon attaining the age of 65 unless the employee held a key position, obviously not applicable here, or could pass a physical examination yearly, the claimant resigned when he reached that age. From another part of the record it appears that the time could be extended under these circumstances only to age 70, and that the claimant could not, because of his health, qualify for an extension of employment beyond the earlier age.
The Commission recorded that one physician even thought the x-rays of 1960 showed an improvement over the condition shown in the x-rays of 1955. Furthermore, the Commission decided there was no competent substantial evidence to buttress the deputy’s findings that as a direct and proximate result of breathing the smoke and dust the preexisting emphysema was seriously and permanently intensified or that the inhalation resulted in total permanent disablement.
So the Commission, one member dissenting, held that the deputy’s order should be reversed and the claim dismissed. And the dissenting member himself disagreed with the deputy to the extent that he thought evidence of aggravation required remanding the cause for the apportionment of damage under Sec. 440.02(19), supra.
We think the pivotal point of the litigation as it is presented to us involved the application of the statute last cited to the facts which may be said to have been established by competent substantial evidence. The condition of the claimant at the time of his employment was clear. The term of his service, from 1953 until 1959, was plainly shown. It is manifest that he was separated from service with the city the day he reached retirement age. Although his physical condition was likely a contributing factor, it was not until the following year that he made the claim that he was entitled to compensation.
How these facts can depict an accident is difficult to see when the definition of accident appearing in the act is scrutinized and the descriptive words are given their ordinary meaning. In the first place, the event to be accidental must be unexpected or unusual. If any sense at all is to be given these adjectives, then how can it be said that the claimant, who at the outset suffered from a lung ailment, emphysema, and ended with it, underwent some unexpected event or faced some unexpected result? For six years he performed his tasks creditably earning during the period repeated raises in pay. It is equally difficult to see why a worker starting with emphysema and ending with it six years later had some unusual experience. Even the finding by the deputy of total disability fails to set the condition as unexpected or unusual for the report of the Veterans Administration before his work began categorized the claimant as disabled because of the disease and his impaired vision.
Moreover, the unexpected or unusual event or result must by express terms of the act happen “suddenly.” For practical purposes this is an emphasis of unexpectedness. We find nothing in the record demonstrating an abrupt occurrence. When the claimant’s employment began, as it continued and when it ended, the claimant had the misfortune to suffer from emphysema. But in spite of the temptation to aid one in distress we cannot attribute the unfortunate condition of the claimant to an unexpected event or result occurring suddenly. The deputy commissioner concluded that the accident was suffered “when throughout his employment * * * [the claimant] was exposed to the continued inhalation of smoke and dust * * * which aggravated a pre-existing condition from which the claimant was *323 suffering.” The deputy found there was no need or possibility of apportionment so this finding may be construed as one designating as an unexpected result happening suddenly an aggravation extending over a period of six years.
We cannot subscribe to that reasoning.
It was a strange coincidence that the date the incapacity reached its peak coincided with the birthday anniversary on which, principally because of age, the claimant was retired.
Counsel have given the decision of this court in Czepial v. Krohne Roofing Co., Fla., 93 So.2d 84, a good going over, and so have we. Upon first examination the resemblance to the case here is striking, but we decline to extend the ruling to the facts with which we now deal.
The petition for certiorari is denied.
ROBERTS, C. J., and TERRELL, THORNAL and O’CONNELL, JJ., concur.