138 So.2d 323 (1962)
Julius C. HENDERSON, Sr., Petitioner,
v.
SOL WALKER AND COMPANY, Bituminous Casualty Corporation, and the Florida Industrial Commission, Respondents.
No. 31318.
Supreme Court of Florida.
February 23, 1962.
*324 C.J. Hardee, Jr., of Hardee & Ott, Tampa, for petitioner.
Charles R. Stack of Macfarlane, Ferguson, Allison & Kelly, Tampa, for Sol Walker and Bituminous Casualty Corp.
Burnis T. Coleman and Patrick H. Mears, Tallahassee, for Fla. Industrial Commission.
HOBSON, Justice.
By petition for writ of certiorari we are called upon to review an order of the Florida Industrial Commission denying to the petitioner employee permanent total disability benefits under the Workmen's Compensation law.
In 1947, while he was working for a former employer, the petitioner sustained an injury arising out of and in the course of his employment which resulted in a fracture of his right leg. As a result of this fracture osteomyelitis developed. After treatment for this condition the petitioner was discharged from medical treatment during July, 1949, at which time the osteomyelitic condition had become dormant or asymptomatic. The petitioner did not suffer any permanent impairment of wage earning capacity as a result of this injury or the disease resulting therefrom. The injury out of which this present claim arises occurred in October, 1954, when during the course of petitioner's employment he received a cut on his right leg. This cut caused a recurrence of the osteomyelitis and after a considerable amount of unsuccessful medical treatment it became necessary for the right foot to be amputated. Petitioner reached maximum medical recovery in October, 1959. There was no involvement of the body as a whole, the petitioner's sole physical impairment being the loss of his right foot.
The respondent employer and its carrier accepted the injury as compensable, provided medical treatment and paid to the petitioner disability benefits for 175 weeks as provided for by Section 440.15(3) (d), F.S.A.
Thereafter petitioner filed a claim for additional disability benefits asserting that the loss of his right foot had resulted in permanent total disability in that his capacity to earn had been completely destroyed.
Following a hearing on the claim the deputy commissioner entered an award granting compensation for permanent total disability.[1] The deputy also rejected the respondent's contention that the benefits *325 should be reduced in proportion to the amount of aggravation or acceleration of petitioner's pre-existing osteomyelitic condition. It was held that Section 440.15(5) (c) was not applicable and that therefore compensation benefits should not be apportioned because petitioner had suffered no impairment of his earning capacity as a result of the first injury. As to the petitioner's earning capacity the deputy determined that because of the loss of his right foot "he can perform no work or services other than those so limited in quality, dependability or quantity that a reasonably stable market for them does not exist, and claimant has suffered a permanent total loss of earning capacity". As to this point, the deputy relied on the decision of this court in Port Everglades Terminal Company v. Canty, Fla., 120 So.2d 596.
On application for review the full commission reversed on the ground that there was no competent substantial evidence to support the deputy's conclusion that the petitioner has suffered a total permanent loss of his wage earning capacity.
By this petition, therefore, we are presented with three issues; first, whether there was competent substantial evidence in accord with logic and reason to support the deputy's factual finding that the petitioner is permanently totally disabled. If this question is answered in the negative no further issues need be disposed of; however, if the answer to the first question is affirmative, then it becomes necessary for us to decide two further issues, viz: Whether the Workmen's Compensation law contemplates the payment of benefits for permanent total disability where the only injury received is a "scheduled" injury listed under Section 440.15(3); and if so, whether under the facts of the instant case the respondent is entitled to apportionment of the disability payments according to the contribution of the pre-existing osteomyelitic condition to the petitioner's disability.
Let us then examine the evidence which the deputy had before him relating to the issue of whether petitioner was permanently totally disabled. Petitioner is a 57 year old Negro man. Although he has a second grade education he can neither read nor write. He has no formal or technical training of any type and has worked most of his life as a common laborer in saw mills, orange groves and on farms. Although he has been fitted with an artificial leg, excessive walking causes pain to his stump. He moves about slowly and is limited in his ability to walk, to lift weights, to bend, to kneel and to balance.
From October, 1958, the date on which maximum medical recovery was reached, to the time of the hearing in September, 1960, the claimant had been unable to find employment except for three days' work as a janitor in a hospital. He got this job through the Florida State Employment Service, but by the end of the third day the prosthesis which he was wearing had caused blisters on the stump of his leg and he was unable to continue. Aside from what he was paid for those three days he has had no other earnings. It appears that he has made diligent efforts to obtain employment both through a private employment agency and through the Rehabilitation Division of the Florida State Employment Service, but his efforts have been in vain. There was testimony that the State Employment Service office, through which petitioner was seeking work, placed from 250 to 300 Negro males a month in jobs designated as "porter", the category in which petitioner was placed. In spite of this large turnover in petitioner's job category, the Employment Service has been unsuccessful in its numerous attempts to place him in a job. Upon consideration of all these factors, we are impelled to the conclusion that the deputy's finding of permanent total disability is abundantly supported by competent substantial evidence. See Ball v. Mann, Fla., 75 So.2d 758.
Accordingly, we must now proceed to the second issue raised. Section 440.15(1) (b) provides:

*326 "Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two thereof shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts." (Emphasis supplied) Section 440.15(3) provides in pertinent part:
"In case of disability partial in character but permanent in quality the compensation shall, in addition to that provided by subsection (2) of this section,[2] be sixty per cent of the average weekly wages, and shall be paid to the employee as follows: * * *
"(d) Foot lost, one hundred and seventy-five weeks' compensation."
It is to be noted that subsection (3), which lists the "scheduled" injuries, does not, by its express terms, provide that such scheduled injuries can only constitute permanent partial disability, or that such an injury cannot amount to permanent total disability. The section commences, "In case of disability partial in character but permanent in quality * * *", and then goes on to list the various scheduled injuries and the corresponding compensation payments to be made therefor. Because of the language of the introductory clause quoted above, it would appear that in deciding whether the section in question is applicable to any given claim, the initial determination must be, not whether the injury is one of those listed as a scheduled injury, but whether the resultant disability is "partial in character but permanent in quality". Of course, by their very nature, the scheduled injuries involving loss of a member are "permanent in quality", but is such an injury necessarily only partially disabling? We think not, and believe that the facts of the instant case afford a prime example of the loss of a single member resulting in permanent total disability. Under such circumstances, Section 440.15 (1) (a), and the final sentence of Section 440.15(1) (b) are applicable, and the question of permanent total disability "shall be determined in accordance with the facts;" that is, whether the claimant's capacity to earn has been totally destroyed. International Minerals & Chemical Corp. v. Tucker, Fla., 55 So.2d 720.
In making this determination, the injured employee's physical condition, age, industrial history, education and inability to obtain the type of work which he can do insofar as affected by the injury must be considered. Ball v. Mann, Fla., 75 So.2d 758.
In the vast majority of cases, a scheduled injury will result in only partial disability. In such event, the amounts of compensation provided for by Section 440.15(3) are conclusive and cannot be varied, inasmuch as the Legislature has undertaken to mathematize the various elements constituting permanent partial disability into fixed statutory sums. Hernandez v. De Carlo, Fla., 116 So.2d 429.
As heretofore noted, however, subsection (3) does not by its terms extend the fixed statutory schedules of payment to cases of permanent total disability, nor have we ever squarely held that benefits for permanent total disability may not be awarded where disability is limited to a scheduled injury. Admittedly, in the case of Jarvis v. Miami Retreat Foundation, Fla., 128 So.2d 393, there is language which would indicate a contrary view. However, the facts of that case are dissimilar to those of the instant case. In the Jarvis case the employee's right foot had been amputated, but the claim for permanent total disability benefits was predicated, not only on the loss of the right foot, but also on a partial disability of the left foot. The court held that the condition of the left foot was not causally related to an industrial accident. In light of this holding, that statement by the court *327 that compensation for permanent total disability would have been improper even if the condition of the left foot had been compensable is obiter dictum, and we are not bound thereby.
In adopting our present construction of the act, we have taken cognizance of the decision of the Industrial Commission in the case of Noah v. Board of Public Instruction of Orange County, 1 F.C.R. 372, cert. denied, Fla., 93 So.2d 902. In that case the claimant's injury was limited to a partial loss of use of his right leg, but because of his inability to obtain employment as a result of the injury and other factors, the deputy commissioner awarded compensation for permanent total disability. The commission affirmed, holding that:
"Section 440.15(3) of the Act is not applicable as it is clearly limited to cases of `disability partial in character but permanent in quality', while Section 440.15(1) governs cases of `total disability adjudged to be permanent.'"
As we held in Miller v. Brewer Company of Florida, Inc., Fla., 122 So.2d 565, the construction given the act by the commission is entitled to great weight, and this court will not adopt a contrary interpretation except for the most cogent reasons. Moreover, where the Act is susceptible of disparate interpretations, the court will adopt that construction which is more favorable to the employee. Wick Roofing Co. v. Curtis, Fla., 110 So.2d 385.
The remaining point to be determined is whether the deputy erred in failing to apply the provisions of Section 440.02(9), F.S.A. so as to render the respondent liable only for the aggravation or acceleration of disability. It clearly appears from the record, and the deputy found as a matter of fact that the petitioner's injury would have healed and would not have ultimately ended in amputation had it not been for his pre-existing circulatory condition which resulted from the pre-existing disease of osteomyelitis. The deputy also found that the petitioner's disease had reached a state of dormancy and that there is nothing in the record to indicate that it would not have remained so had it not been for the cut which petitioner received on his leg. Notwithstanding the fact that petitioner's disease was dormant at the time of his injury, it is apparent from the evidence that the pre-existing disease and the compensable accident merged to produce the disabling injury. In such a case the employer is entitled to assert the benefits of Section 440.02(19), F.S.A., even though it may be difficult to determine the amount of aggravation and acceleration of disability. See United Electric Company v. Myers, Fla., 134 So.2d 7. We have noted that the deputy based his failure to apportion in part on the provisions of Section 440.15(5) (c), holding that the claimant was not, prior to his last injury, disabled, and that therefore the provisions of Section 440.15(5) (c) were not applicable. This same argument was advanced and rejected in the recent case of Murray v. City of St. Petersburg, Fla., 138 So.2d 319, Sup.Ct. Case Number 31,313, opinion filed February 21, 1962. Consequently this last question must be answered in the affirmative and the cause remanded for a determination of the degree of aggravation or acceleration of disability attributable to the petitioner's injury received while in the employ of the respondent.
For the reasons expressed, the order of the full commission should be and it is hereby quashed and the cause is remanded for further proceedings in conformity with the views expressed herein.
It is so ordered.
ROBERTS, C.J., and DREW, THORNAL, and O'CONNELL, JJ., concur.
NOTES
[1] Because the injury out of which petitioner's disability arose occurred prior to July 1, 1955, compensation payments were limited to 700 weeks with credit for compensation already paid. Section 440.15(1) (c), F.S.A.
[2] Subsection (2) provides for compensation for temporary total disability.