CALDWELL, Justice.
This cause is here on petition for writ of certiorari to review the order of the Industrial Commission affirming the order of the deputy commissioner dated April 19, 1962. In that order Deputy Commissioner Lake required that the employer/carrier pay Dr. Nadler, a general practitioner, for 158 physio-therapy treatments had by claimant between June 14, 1960, and September 14, 1961, and awarded attorney’s fees for "“services to claimant in securing for him the payment of Dr. Nadler’s bill”.
Petitioner contends (1) the carrier was not obligated to pay the bill of Dr. Nadler for treatment not authorized (2) the treatment in question was not necessary and (3) no attorney’s fees should have been awarded.
In the first order, entered June 29, I960, affirmed by the Full Commission and not reviewed, Deputy Cardone found that claimant had sustained a compensable injury by accident resulting in a five per-cent permanent disability of the body as a whole and stated:
“The claimant’s doctor [Dr. Nadler] shall check with the carrier for authorization for further treatment, as it is the opinion of the undersigned Deputy Commissioner that the claimant has already had frequent treatments after maximum improvement was reached.”[1]
In June of 1960 the claimant returned to Dr. Nadler for further physio-therapy treat *873 ments. On July 22, 1960, Dr. Nadler filed a Surgeons Report form to secure authorization for additional therapy. The carrier promptly advised Dr. Nadler and the claimant that Dr. Nadler was not authorized to give further treatment and referred the claimant to either of two orthopedics. Dr. Nadler replied August 13, 1960, that he would continue rendering treatments to the claimant. Claimant refused to go to either of the recommended specialists. The carrier, by letter dated August 15, 1960, again informed Dr. Nadler that he was not authorized to treat claimant and stated that if claimant did not wish the services of either of the doctors suggested by the carrier, his recourse was to the Industrial Commission.
On September 2, 1960, the carrier, in response to a telephone conversation with the claimant, notified him by letter that an appointment was arranged for him with Dr. Weiland. That appointment was not kept. The claimant continued to visit Dr. Nadler for treatments of diathermy, deep sound, heat, hot packs, rest and sedation. These treatments, Dr. Nadler testified, did nothing to improve claimant’s condition “over a long-range view”.
The first suggestion of the possibility of surgery was made by Dr. Gregory, to whom Dr. Nadler had referred claimant, in a report to the carrier on September 27, 1960, in which he suggested that if bed rest, traction and physio-therapy did not improve claimant after six weeks, he would recommend myelograms and consideration of surgery. It was arranged between the parties for further examination of claimant by Dr. Neal. After examination by Dr. Neal, in which a negative myelogram was taken, the doctor discharged claimant on December 6, 1960, as not requiring further medical treatment.
Meanwhile, another doctor to whom Dr. Nadler had referred the claimant, Dr. Perl-mutter, suggested the possibility of exploratory surgery. Dr. Gregory, in his report of March 1961 “reluctantly” recommended the exploratory operation. Dr. Perlmutter stated in his deposition taken March 14, 1961, in connection with the claim for modification, that he wanted further examinations of claimant and determination that there existed one of the three possible reasons for the operation: (1) Intractable pain, (2) pain sufficient to cause complete disability or (3) neurological deficit; that since neither reasons (1) nor (3) existed, the question turned on claimant’s disability. Despite the hesitancy of the doctors, the parties, on March 4, 1961, agreed to the operation which was performed some six months later.
Dr. Perlmutter who performed the operation in October 1961, testified that, as a result: “We found what was debated around the room — we found a mildly protruded intervertebral disc and we believe that it probably was protruded but wasn’t a herniated intervertebral disc or an extruded intervertebral disc. It probably was producing mild pressure on the L-5 nerve root on the left side — probably.”
 The instant petition arises from a claim filed May 16, 1961, solely for reimbursement for the 158 treatments of claimant by Dr. Nadler between June 14, 1960, and September 14, 1961. The order of Deputy Cardone, dated June 29, 1960, required that the claimant’s doctor, Dr. Nadler, check with the carrier for authorization for further treatment. This order was affirmed by the Full Commission and was never modified. The record does not disclose that the carrier refused the claimant medical treatment although it did, as it had the right, refuse further treatment by Dr. Nadler.[2] Section 440.13(1) Florida Statutes, F.S.A., provides in part as follows:
“If the employer fails to provide the same [medical service and supplies] *874 after request by the injured employee, such injured employee may do so at the expense of the employer, the reasonableness and the necessity to be ap- ■ proved by the commission. The employee shall not be entitled to recover any amount expended by him for such treatment or service, unless he shall have requested the employer to furnish the same and the employer shall have failed, refused or neglected to do so * * • *.” (Emphasis added).
, The deputy did not find, nor could he have on the record, that the claimant ever requested and was refused authorization for physio-therapy.[3] Indeed, during the period in question, the carrier offered claimant the services of four doctors, who were authorized to treat him.
The deputy, in allowing reimbursement for Dr. Nadler’s assuasive treatments, relied upon his finding that the carrier had failed to provide surgery after request. Although the point is not material to the controversy, it should be noted there is no evidence in the record that surgery was denied. There was delay because the doctors, in the light of negative myelograms, were unsure of disc involvement and uncertain that claimant would be benefited by an operation, but that delay cannot be equated with a refusal. We note the record is silent on whether there was, in fact, any benefit from the operation.
The carrier is not obligated to pay Dr. Nadler’s charge. In view of this holding it is unnecessary to discuss the other points raised by petitioner. The petition for writ of certiorari is granted, the order of the Industrial Commission is quashed and the cause remanded with directions to vacate and set aside the order of the deputy and to enter an order in accordance with this opinion.
ROBERTS, ‘ C. J., THORNAL and O’CONNELL, JJ., and JONES, Circuit Judge, concur.

. Maximum medical improvement was found to be “on or before January 6, 1980”. Dr. Nadler’s bill for 149 physiotherapy treatments between July 9, 1959, and May 23, 1960, which included 51 treatments after the date of maximum medical improvement, was paid by the carrier and is not in issue.

. Wickersham v. Eastern Airlines, Inc., 2 F.C.R. 4, Cert. denied, 93 So.2d 005 (Fla.1956); Gant v. Virginia Chemical Corp., 3 F.C.R. 169, Cert. denied, 105 So. 2d 824 (Fla.App.2d 1958).

. See, United Elec. Co. v. Myers, 134 So.2d 7 (Fla.1962).