BROWNING, J.
Donald Capps, the claimant, appeals the judge of compensation claims’ (JCC) order denying and dismissing with prejudice his claims for methadone treatment, methadone reimbursement, mileage, and attorney’s fees and costs connected to the claims for methadone treatment. The JCC found these claims are precluded by the operation of section 440.02(1), Florida Statutes (1989), as construed in Milmir Constr. Co. v. Smith, 582 So.2d 52 (Fla. 1st DCA 1991), because the claimant had a pre-existing, long-established narcotic dependency, which arose from medical treatment for a work-related injury and was aggravated subsequently when his authorized treating physician prescribed a different narcotic in the course of treating his industrial injuries. Liberally construing the statute defining “accident,” as we are required to do pursuant to the law in effect at the time of the claimant’s 1989 industrial accident, see C.F. Wheeler Co. v. Pullins, 152 Fla. 96, 11 So.2d 303, 305 (1943) (en banc), we conclude that the JCC misconstrued the intent and scope of the statute. We reverse the order and remand for further proceedings consistent with the conclusions set forth herein.
The workers’ compensation statute defines “accident” as follows:
“Accident” means only an unexpected or unusual event or result, happening suddenly. A ... disability ... due to the accidental acceleration or aggravation of a ... disease due to the habitual use of alcohol or narcotic drugs, shall be deemed not to be an injury by accident arising out of employment.
§ 440.02(1), Florida Statutes (1989). The same chapter defines “disability” as follows:
“Disability” means incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury.
§ 440.02(10), Fla. Stat. (1989). “Injury” is defined, in pertinent part, as follows:
“Injury” means personal injury or death by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury.
§ 440.02(16), Fla. Stat. (1989). The JCC found that because the claimant “had an accidental aggravation of a disease due to the habitual use of narcotic drugs,” this aggravation “shall be deemed not to be an injury by accident arising out of employment.”
The claimant, an industrial electrician, was 37 years old when he was injured in a compensable accident on April 29, 1989. After a June 1991 hearing, the JCC adjudicated the claimant permanently and totally disabled and ordered the employer/carrier to provide him with attendant care. Pursuant to subsequent orders, attendant care was modified.
*73 In his April 24, 1998, petition for benefits, the claimant sought authorization for past and future treatment by Dr. Lefton at the Central Florida Substance Abuse Treatment Center, Inc. (the Center), a Brevard County methadone maintenance program where he received treatment for his prescription drug dependency; reimbursement for payments the claimant had made for methadone treatment at the Center[1]; reimbursement of mileage to and from the Center associated with the past and future methadone treatment[2]; and costs, interest, penalties, and attorney’s fees. The claimant asserted that his authorized treating physician had prescribed addictive drugs to treat his work-related injuries and subsequently referred him to the Center for treatment of the drug dependency that resulted from taking the prescribed narcotics. The claimant argued that even if he previously had been addicted to narcotics as a result of a 1981 industrial accident, the Florida Legislature intended an employer to accept an employee in the state or condition it found him or her in, and thus to assume the risk of a diseased condition {e.g., an addiction to prescription drugs) aggravated by a subsequent workplace injury. See Davis v. Artley Constr. Co., 154 Fla. 481, 18 So.2d 255, 258 (1944) (en banc). That is, the claimant argued that his dependency upon prescribed narcotics is a compensable condition under the particular circumstances of this case. He denied using any addictive drugs other than those prescribed by his authorized doctors for his work-related injuries.
On the other hand, the appellees — the employer/carrier — relied upon the statutory definition of “accident,” whereunder an accidental aggravation of a disease due to the habitual use of narcotic drugs must be deemed not to be an injury by accident arising out of employment. Specifically, the employer/carrier raised the following defenses: 1) according to Milmir Constr. Co., supra, and section 440.02(1), Florida Statutes (1989), the definition of “accident” does not include the provision of medical care for aggravating/making symptomatic pre-existing narcotic drug use or the tendency to use the same; 2) Dr. Lefton was not authorized by the employer/carrier; 3) there is no medical necessity for the care claimed; 4) all medical care and mileage requested for reimbursement prior to the filing of the .petition for benefits are not reimbursable, for the claimant unilaterally received said care and never requested authorization from the employer/carrier; 5) the medical mileage claimed is excessive; 6) treatment by Dr. Lefton at the Center is personal in nature and unrelated to the industrial accident; 7) reimbursement of bills claimed from Dr. Lefton and the Center depends on hearsay; 8) all the above claims have been waived or abandoned or are time-barred; 9) there is no medical proof to show the claimed bills and treatment are causally related to the accident and medically necessary, the bills claimed have not been submitted on the proper forms pursuant to the fee schedule, and lay testimony is insufficient to prove the bills; 10) Dr. Lefton and the Center never filed his bills or medical reports with the employer/carrier as required by statute, and he refused to produce them in 1997; and 11) no costs, interest, penalties, or attorney’s fees are due or owing.
*74 Competent substantial evidence supports the JCC’s findings that shortly after the claimant sustained back injuries in an industrial accident in 1981, he was treated by orthopedic surgeon Dr. Swan, who prescribed the F.D.A. Class II drug Percodan. Dr. Swan testified that during a September 1986 medical visit, he told the claimant he had been taking too much Percodan and its use would be discontinued. The doctor’s written medical notations indicated the claimant had not requested any pain medication during that visit. After an extended period of time when the claimant was “clean” of narcotics, the physician-authorized Percodan prescriptions resumed in 1987 after the claimant re-injured his back. Treatment with Dr. Swan continued to 1988. Dr. Swan opined he did not believe the claimant had become drug-addicted while under his care, and the claimant did not seem to be addicted to any kind of medication when he was last treated by Dr. Swan.
In May 1989, shortly after his industrial accident, the claimant began treatment with neurologist Dr.. Leeds, an authorized physician who prescribed fairly large daily doses of Tylox, a Class II narcotic that is an addictive analgesic opiate. In an April 1990 medical report, Dr. Leeds opined the claimant most likely was dependent on Ty-lox. On Dr. Leeds’ referral, the claimant started going daily to the Center in June 1991 for methadone treatment of his opiate dependency; he was under the care of Dr. Lefton at the Center from 1992. Dr. Lef-ton opined that the Tylox prescribed by Dr. Leeds for the industrial injury aggravated and re-established a pre-existing, long-established dormant narcotic drug dependency. Dr. Lefton said he .prescribed methadone primarily for the claimant’s opiate addiction, and secondarily for pain problems. Dr. Lefton testified that the claimant submitted to urine samples on a regular basis at the Center and was always “clean” except for the presence of the prescribed methadone.
At oral argument, the claimant’s counsel fairly characterized the issue on appeal as essentially this:
IF AN INJURED WORKER BECOMES INVOLUNTARILY ADDICTED TO NARCOTIC DRUGS „ PRESCRIBED BY AN AUTHORIZED TREATING PHYSICIAN FOR TREATMENT OF A WORK-RELATED INJURY, AND THE ADDICTION BECOMES DORMANT, BUT WHILE WORKING FOR A SUBSEQUENT EMPLOYER, THE INJURED WORKER HAS ANOTHER INDUSTRIAL ACCIDENT FOR WHICH AN AUTHORIZED TREATING PHYSICIAN ' PRESCRIBES NARCOTIC DRUGS THAT REKINDLE THE PRIOR ADDICTION, CAN THE NEW EMPLOYER/CARRIER BE HELD RESPONSIBLE FOR THE RE-ESTABLISHMENT OF THE INVOLUNTARY DRUG DEPENDENCY AND ASSOCIATED TREATMENT OF THAT CONDITION?
Having considered the peculiar circumstances in the instant record, we answer the question in the affirmative.
In resolving this question, we must try to discern the legislative intent underlying the definition of “accident.” The language relating to “narcotic drugs” has been a part of the definition of “accident” since the inception of workmen’s compensation legislation in the 1930s. See Laws of Florida 1935, c. 17481, § 2. Our search for the legislative history of this longstanding provision disclosed no archival materials clarifying the specific intent in enacting the exclusionary provision for the habitual use of narcotic drugs, and counsel for the parties offered nothing in the way of legislative analyses. Nevertheless, we conclude *75 that several considerations militate in favor of reversing the order and remanding for farther proceedings.
First, the law in effect at the time of the claimant’s industrial accident provided that Chapter 440 was to “receive a liberal construction.” See Pullins, supra, 11 So.2d at 305. The Supreme Court of Florida has stated: “[Wjhere the Act is susceptible of disparate interpretations, the court will adopt that construction which is more favorable to the employee.” Henderson v. Sol Walker & Co., 138 So.2d 323, 327 (Fla.1962). This principle exists because the workers’ compensation chapter “is remedial legislation and is intended to be liberally construed in such a manner as to effectuate the purpose for which it was enacted.” Topeka Inn Management v. Pate, 414 So.2d 1184, 1186 (Fla. 1st DCA 1982)[3].
Mindful that the statutory provision is to be given a liberal construction in this case, we must decide what constitutes an “accident” and a “disability.” The first part of the definition of “accident” is clear. An accident “means only an unexpected or unusual event or result, happening suddenly.” § 440.02(1), Fla. Stat. (1989). The claimant experienced such an event in a series of workplace incidents, including the April 1989 lifting incident, when he sustained injuries that resulted in pain for which he was medically treated with narcotics. A disability refers to “incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury.” § 440.02(10), Fla. Stat. (1989). The disability at issue here is the debilitating effect of narcotics addiction; the disease is prescription drug dependency. The legislature has elected to exclude certain types of disabilities from its definition of “an injury by accident arising out of the employment.” See § 440.02(1). Specifically, if the disability is “due to the accidental acceleration or aggravation of a ... disease due to the habitual use of alcohol or narcotic drugs,” then the disability is not to be considered “an injury by accident arising out of the employment.” See § 440.02(1). What is meant by “an accidental acceleration or aggravation of a ... disease due to the habitual use of ... narcotic drugs” is not entirely clear.
In determining whether the claimant’s disability fits within the exception, the employer/carrier contend that Milmir Constr. Co., 582 So.2d at 52, is factually on point and compels affirmance of the JCC’s order. In that case, claimant Smith sustained a work-related injury to his lower back in 1987. Before the accident, Smith had an alcohol abuse problem and had been admitted in 1980 to an alcohol rehabilitation clinic. In 1982, he was placed in “detox” and underwent treatment with Alcoholics Anonymous. After his 1987 accident, Smith was prescribed pain pills and muscle relaxants. His authorized physician testified that the workplace injury and the pain medications accelerated and aggravated Smith’s alcoholism and drug dependency. Smith stayed at an alcohol addiction recovery center for 35 days, for which the employer/carrier paid benefits. Later, Smith’s addiction to pills and alcohol recurred. His treating physician rec *76 ommended a second visit to the treatment center, and the employer/carrier agreed to pay for a two-week visit. After staying at the recovery center for five or six weeks and being released, Smith remained “straight” for seven months. Subsequently, he readmitted himself for a third visit. Smith testified that after the third admission, he was off pain pills but still drank. He claimed not to be an alcoholic. In March 1990, the JCC ordered the employer/carrier to provide benefits to treat Smith’s preexisting alcoholism based on a finding that the work-related accident “aggravated and/or made symptomatic” the alcoholism. See id. at 58. Reviewing the JCC’s order in the employer/carrier’s direct appeal in Milmir Constr. Co., we examined section 440.02(1) and determined that the provision “was intended to preclude recovery for alcohol and drug-related diseases, such as are sought here.” See id. Accordingly, we reversed the award of benefits related to Smith’s voluntary alcohol abuse problem. See id.
Aside from the liberal construction given to the statute, a second reason to reverse the JCC’s order and remand the case is that Milmir Constr. Co. is factually distinguishable from the instant ease. Smith’s disease and disability arose from the willful use of alcohol, whereas the claimant’s narcotics addiction and its attendant disability arose solely from medications prescribed by his authorized treating physicians for his industrial injuries. The significance of this distinction between voluntary and non-volitional acts underlying a workers’ compensation claim is borne out by a decision we cited in Milmir Constr. Co., 582 So.2d at 53 n. 1, to support our ruling: Dan River, Inc. v. Shinall, 186 Ga.App. 572, 367 S.E.2d 846, 847 (1988).
In Shinall, the Court of Appeals of Georgia addressed a 1973 Georgia amendment to the workers’ compensation statute, former Georgia Code Annotated section 114-102, that, in the court’s view, “extend[ed] the absolute prohibition against a finding of a compensability as an ‘injury’ or ‘personal injury’ to cases of alcoholism and ... extend [ed] the conditional prohibition against such a finding to certain cases of drug addiction.” See 367 S.E.2d at 847. The amendment provided generally that “[ajlcoholism or disabilities attributable thereto” and “[djrug addiction or disabilities resulting therefrom shall not be deemed to be ‘injury’ or ‘personal injury’ by accident arising out of and in the course of employment.” See id. Importantly, however, the Georgia Legislature expressly excepted from this general prohibition any drug addiction that “was caused by the use of drugs or medicines prescribed for the treatment of the initial injury by an authorized physician.” See id.
Claimant Shinall had suffered a work-related injury to her back, after which she received workers’ compensation income and medical benefits. However, the employer/carrier refused to pay a bill for alcohol detoxification treatment, which was submitted for payment as an authorized medical expense. To support her claim before a state board of workers’ compensation, Shinall contended that her alcohol dependency and her need for detoxification were the direct results of pain and depression related to her compensable back injury. The employer/carrier were ordered to pay for the alcohol detoxification services based on a finding that detoxification resulted from Shinall’s workplace injury. See id. at 846-47. Concluding that the amendment precluded recovery “for any and all claims for compensation based upon alcoholism,” the Georgia appellate court reversed the award. See id. at 848. In sum, although the result in Shinall supports our holding in Milmir Constr. Co., the case at bar is materially distin *77 guishable from those two cases, in that the ■willful abuse of alcohol is different from the non-volitional use of doctor-prescribed narcotics for treatment of work-related injuries.
In fact, in Milmir Constr. Co., 582 So.2d at 53 n. 1, we implicitly considered the public policy involved in the Shinall decision and in the Georgia statutory amendment, and we set forth certain specific concerns underlying legislative proscriptions involving alcohol and drug abuse:
Alcohol and drug abuse have generated prejudicial language in several parts of the Florida Act. The primary reason for this is that it has been felt that these problems are self-inflicted ones, not industrially related ones, and industry ought not to be forced to bear the results of self-inflicted injury or disease. A secondary reason is that workers’ compensation coverage does not constitute general health insurance.
Id.,quoting 6 E. Davis, West’s Florida Practice, “Workers’ Compensation” § 221 (1982).
Thus, our holding in Milmir Constr. Co. is consistent with the legislative aim to exempt employers from responsibility for their employees’ self-inflicted alcohol abuse and drug abuse. See id. at 53 n. 1; see also Turner v. Carl Blanchard Plastering, 590 So.2d 1025 (Fla. 1st DCA 1991) (affirming JCC’s denial of benefits for past, present, and future alcohol-related expenses). Indeed, it is self-evident that the twin scourges of alcohol abuse and the abuse of drugs (illegal and legal) permeate the employment field and society at large.
The instant case presents a very different factual situation, however. In Protectu Awning Shutter Co. v. Cline, 154 Fla. 30, 16 So.2d 342, 343 (1944), the Supreme Court of Florida commented on the purposes underlying our state’s workers’ compensation law:
The purpose of the act is to shoulder on industry the expense incident to the hazards of industry; to lift from the public the burden to support those incapacitated by industry and to ultimately pass on to the consumers of the products of industry such expense.
The claimant’s narcotic drug dependency arose from high doses of addictive medications prescribed for pain by his authorized treating physicians. His pain resulted from his work-related injuries. But for his industrial accidents, the claimant would not have been prescribed the narcotics that led to his drug dependency. The claimant’s physician referred him to the Center’s methadone treatment program to deal with the addiction to opiates. In other words, the claimant’s drug dependency was not, and is not now, self-inflicted or willful. This fact constitutes a compelling reason to re-evaluate the JCC’s analysis of the definition of “accident.”
After years of being prescribed Perco-dan or Percocet for Ms industrial injuries, the claimant experienced an extended period of time when he was “clean” and his drug dependency was dormant. When he sustained injuries in another workplace incident in 1989, the claimant went to a different authorized treating physician, who prescribed Tylox, the effect of which was a sudden and dramatic rekindling of the narcotics dependency. The claimant’s medical history, including his prescribed medications, is well-documented in the record. Dr. Lefton testified that the Tylox prescribed by Dr. Leeds for the industrial injury aggravated the claimant’s long-established but dormant narcotic drug dependency. Thus, competent substantial evidence supports the JCC’s finding that the claimant’s narcotic dependency, i.e., his “disease due to the ... use of narcotic drugs,” was aggravated. However, for the event or result not to be deemed “an inju *78 ry by accident arising out of employment,” the statute requires also that any “acceleration or aggravation” of the disease be “accidental” and that the use be “habitual.” See § 440.02(1), Fla. Stat. (1989).
The statute offers no guidance as to precisely what the legislature meant by “accidental” and “habitual.” The standard definition of “accidental” is “[h]appening by chance, or unexpectedly.” See Webster’s New International Dictionary 13 (1926). If, indeed, this is the meaning intended by the drafters of the law, we find no competent substantial evidence in the record to support the JCC’s finding that this aggravation of a disease due to the habitual use of prescribed narcotic drugs was “accidental.” In fact, the Center’s Dr. Lefton, who is a physician practicing addictionology, testified that in the field of addiction, a phenomenon called “kindling” manifests itself where a person on an escalating dose of narcotics can stop taking the medication for a number of months, or years, with the result that receptors in the brain that are stimulated by narcotics and produce euphoria are turned off or are merely “smoldering,” like ashes from a fire. Subsequently, even a single, very minor dosage of a narcotic drug can cause the receptors to “flare” and to “reignite” the drug dependency. Given this known phenomenon in the field of drug addiction, we conclude that the re-establishment of the claimant’s drug dependency under the circumstances set forth in the record was not an unexpected or unusual result or a chance event. Instead, under this view of the statute, his addiction to narcotics constitutes a compensable condition resulting from a compensable industrial accident. See McKinney v. McKinney Farms, 380 So.2d 469 (Fla.1st DCA 1980) (where the authorized treating physician referred claimant to a second doctor in the exercise of his own medical judgment, and not at claimant’s request, the referral and the subsequent hospitalization and referral of claimant to a third doctor were in the normal progression of authorized treatment, and the carrier was financially responsible).
Alternatively, it was suggested at oral argument that because the term “accidental” is used in the statutory definition of “accident,” the word was intended to have the literal meaning, i.e., arising from or pertaining to an accident. Construed this way, the statute would mean that if the disability was owing to the industrial accident’s accelerating or aggravating the habitual drug dependency, there would be no “injury by accident arising out of the employment.” From a financial, risk-management, and public-policy standpoint, it is logical and reasonable for the legislature to protect employers from responsibility for the disabilities of employees whose voluntarily acquired alcohol or narcotic drug diseases happen to be accelerated or aggravated by an unexpected event or accident, including a work-related one. In contrast, it seems highly unlikely that the legislature would intend to exclude a disability such as a narcotic drug dependency that arose solely because an authorized treating physician prescribed the drug(s) in the normal course of medical treatment for injuries arising from an industrial accident. In any event, where a workers’ compensation statute lends itself to different interpretations, the rule set forth in Henderson, 138 So.2d at 327, compels us to adopt “that construction which is more favorable to the employee.” The JCC’s construction of the statute led to a contrary result.
The statute does not define “habitual.” To the extent that the term means “customary,” see Webster’s New International Dictionary 967 (1926), then the claimant’s use of narcotic drugs was habitual, in accordance with the prescriptions and dosag *79 es recommended by his authorized treating physicians. On the other hand, to the extent that “habit” suggests “an aptitude or inclination for some action,” see id., ie., a willful rather than non-volitional act, the claimant’s use of the prescribed medications was not “habitual.” See Henderson, 138 So.2d at 327.
While recognizing that foreign case law is non-binding, we find very persuasive support for our distinction between voluntary and involuntary use of narcotic drugs in a number of decisions from other states. See, e.g., Ballard v. Workmen’s Compensation Appeals Bd., 3 Cal.3d 832, 92 Cal. Rptr. 1, 478 P.2d 937 (1971) (in bank); McAree v. Gerber Prod. Co., 115 R.I. 243, 342 A.2d 608 (1975); Central State Hosp. v. Evans, 147 Ga.App. 514, 249 S.E.2d 325 (1978); Employers Mut. Liab. Ins. Co. v. Josey, 142 Ga.App. 887, 237 S.E.2d 215 (1977); Dumas v. Hartford Ins. Co., 583 So.2d 31 (La.Ct.App.1991); Brick v. R.B. Hamilton Trucking Co., Inc., 60 A.D.2d 735, 401 N.Y.S.2d 12 (N.Y.App.Div.1977); Eisele v. Triangle Util., Inc., 9 A.D.2d 967, 193 N.Y.S.2d 706 (N.Y.App.Div.1959).
We conclude that the JCC erred as a matter of law in ruling summarily that involuntary addiction to a legal narcotic, prescribed by an authorized treating physician as necessary treatment for an industrial injury, is automatically deemed not to be an injury by accident arising out of employment under section 440.02(1), Florida Statutes (1989). Given his threshold finding that the facts did not demonstrate an injury by accident arising out of employment, the JCC initially did not need to address the employer/carrier’s other defenses. In light of our holding regarding the scope and meaning of “accident” and “habitual” in section 440.02(1), we REVERSE the JCC’s order and REMAND the case for further proceedings.
BOOTH and KAHN, JJ., CONCUR.

. The claimant said he had gotten paid for the methadone with cash from his own resources and got receipts. The most recent information in the record disclosed the cost of the daily dosage is $10.00, or $70.00 weekly.

. The Center is a 10-mile drive each way for the claimant.

. Although the Florida Legislature has stated in section 440.015, Florida Statutes (Supp. 1990), that "the facts in a workers’ compensation case are not to be interpreted liberally in favor of either the rights of the injured worker or the rights of the employer," this legislation was enacted to operate retroactively only to October 1, 1990, i.e., after the claimant's 1989 industrial accident. See Laws of Florida 1990, c. 90-201, § 8. Assuming for the sake of argument that this newer provision applied, we still would conclude that the case law and the public policy favoring the distinction between willful and non-volitional acts compels reversal under the facts in the case at bar.