414 So.2d 1184 (1982)
TOPEKA INN MANAGEMENT and Insurance Company of North America, Appellants,
v.
Sharon K. PATE, Appellee.
No. AF-149.
District Court of Appeal of Florida, First District.
June 11, 1982.
*1185 John J. O'Riorden of Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, Sarasota, for appellants.
Alex P. Lancaster, Sarasota, for appellee.
McCORD, Judge.
The employer/carrier appeal from a workers' compensation order awarding wage-loss benefits to the claimant. Since this injury occurred on August 2, 1979, this appeal is governed by the provisions of Section 440.15(3)(b), Florida Statutes (1979). We affirm.
Claimant, a former waitress, suffered a compensable injury to her back when she slipped and fell while working in a coffee shop. As a result of this fall, she suffered a compression fracture of the first lumbar vertebrae. Her treating physician, Dr. Miller, assigned a maximum medical improvement date of February 18, 1980, and a permanent partial impairment to the body as a whole of 5%. He also advised the claimant to avoid very heavy lifting.
From the date of maximum medical improvement until April 18, 1980, claimant's only efforts to seek employment were weekly telephone calls to her former employer. Her reason for doing so was her expectation that she would, in fact, be able to return to her former position. Finally, tiring of waiting for an employment opportunity to open with her former employer, claimant got a job as a secretary with CETA beginning April 18, 1980. This was a full-time job at the minimum wage then prevailing. She continued in this position until August of 1980, when she quit to care for her convalescing husband, who was recovering from a heart attack. She then returned to full-time employment in October of 1980 at the Nursing Pavilion as a nurse's aide. This job, too, was minimum wage. In the interim between August and October, she had also worked at a Waffle House as a cook for one week. She continued as a nurse's aide until January of 1981, at which time she suffered another compensable injury to her back. As of the hearing date below, July 10, 1981, she had not yet recovered from the second accident. In his order, the deputy commissioner found that she was "... entitled to recover wage-loss benefits together with penalties and interest from the date of maximum medical improvement and continuing with a credit for all benefits unpaid." This appeal ensued.
Examining these facts on a month-to-month basis, as we must, [§ 440.15(3)(b)1, Fla. Stat.(1979)] we find that the claimant has met her burden of establishing *1186 her entitlement to wage-loss benefits. Initially, we have no difficulty in determining that the claimant has suffered a wage loss for those two periods of time in which she worked as a CETA secretary and a nurse's aide, respectively. As both these jobs were clearly within her prescribed physical limitation, we can only conclude that she has accepted "employment commensurate with... her abilities" [§ 440.15(3)(b)2] and, therefore, that her claimed wage loss during those two periods of time is the result of her compensable injury.
The employer/carrier argues that the claimant may not recover wage-loss benefits for the period of time between August, 1980, and October, 1980, for the record clearly indicates that she quit work in order to care for her convalescing husband who was recovering from a heart attack. Thus, they argue, she has not established "... that any wage loss claimed (for that period) is the result of the compensable injury." § 440.15(3)(b)2, Fla. Stat.(1979). Strictly speaking, her wage loss during this period of time was not solely due to her compensable injury. That fact, however, does not preclude her entitlement to wage-loss benefits. It is a cardinal rule of statutory construction that the entire statute under consideration, and not just isolated phrases and words, must be considered in determining legislative intent, and effect must be given to every part of the provision under construction and every part of the statute as a whole. See State v. Gale Distributors, Inc., 349 So.2d 150 (Fla. 1977). Section 440.15(3)(b)2 provides:
The amount determined to be the set salary, wages, and other remuneration the employee is able to earn after reaching the date of maximum medical improvement shall in no case be less than the sum actually being earned by the employee, including earnings from the sheltered employment. In the event the employee voluntarily limits his or her income or fails to accept employment commensurate with his or her abilities, the salary, wages, and other remuneration the employee is able to earn after the date of maximum medical improvement shall be deemed to be the amount which would have been earned if the employee did not limit his or her income or accepted appropriate employment. Whenever a wage-loss benefit as set forth in subparagraph 1 may be payable, the burden shall be on the employee to establish that any wage loss claimed is the result of the compensable injury. (Emphasis supplied.)
Considering the statute as a whole and applying it to these facts, we conclude that, by accepting employment as both a secretary and a nurse's aide, claimant has demonstrated the "salary, wages, and other remuneration (she) is able to earn after the date of maximum medical improvement." Therefore, the wage loss attributable to her injury for these months when she was caring for her ill husband is the difference between her former salary as a waitress and the prevailing minimum wage. As the Workers' Compensation Act is remedial legislation and is intended to be liberally construed in such a manner as to effectuate the purpose for which it was enacted, [Gillespie v. Anderson, 123 So.2d 458 (Fla. 1960)] our construction of Section 440.15(3)(b)2 is consistent with the legislative intent underlying wage loss, which is that a worker be compensated for his actual, demonstrable loss. See Alpert & Murphy, Florida Workmen's Compensation Law, § 11B-1 (Supp. 1981). Further, this Court does not favor technical means for denying coverage, and to mechanically apply the last phrase of the statute, without any reference to the preceding phrases or the legislative intent, would result in such a disfavored technical result. However, we caution against anyone's misconstruing this opinion as condoning an award of wage-loss benefits whenever an employee has quit his or her job. Factors such as length of employment and the reason for quitting, among others, are important considerations and must be addressed to the sound discretion of the deputy commissioner.
We also find no error in the award of wage-loss benefits from February 18, 1980, through April 18, 1980. Claimant's belief that she would be able to return to her former employment, coupled with her subsequent diligent efforts to work and the *1187 relatively short period of time in which she was unemployed, reveal adequately that she has suffered a demonstrable wage loss for these two months and that the wage loss was the result of her compensable injury.
As noted previously, in January of 1981, the claimant suffered yet another disabling injury from which she had not yet recovered. Under Section 440.15(5)(c) and (d), Florida Statutes (1979), an employee is entitled to both wage-loss benefits and temporary total disability benefits if she suffers an accident causing temporary total disability while she is still receiving benefits from the previous accident. Alpert & Murphy, Florida Workmen's Compensation Law, § 11B-12, p. 61 (Supp. 1981). Subsection (c) also provides:
[T]he total benefits payable shall not exceed the maximum compensation rate in effect for temporary disability at the time of the subsequent injury. Any reduction in benefits due to such limits shall be applied first to the wage-loss benefits available as a result of the prior injury.
Since the deputy's order does not contain any such language, we hereby modify it to include such a proviso and, as modified, AFFIRM the order.
ROBERT P. SMITH, Jr., C.J., and BOOTH, J., concur.