422 So.2d 870 (1982)
REGENCY INN, Aetna Casualty & Surety Company, Appellants,
v.
Linda Faye JOHNSON, Appellee.
No. AE-354.
District Court of Appeal of Florida, First District.
June 16, 1982.
On Rehearing September 23, 1982.
Rehearing Denied December 1, 1982.
*871 Margaret E. Sojourner, of Haas, Boehm, Brown & Rigdon, Orlando, for appellants.
Clifton L. Howell, Jr., Winter Haven, for appellee.
Michael R. Miller and John-Edward Alley, Tampa, for Alley & Alley, Chartered.
H. George Kagan, Miller, Hodges & Kagan, Miami, for Risk Management Services, Inc.
Michael A. Edwards, Quincy, for U.S. Sugar Corp.
L. Kathleen Horton, Clark, Partington, Hart, Hart, & Johnson, Pensacola, for City of Pensacola.
Richard A. Kupfer, Cone, Wagner, Nugent, Johnson, Hazouri & Roth, West Palm Beach, for Academy of Florida Trial Lawyers.
Mary Ann Stiles, Stiles & Livingston, Tampa, for Associated Industries of Florida, Inc.
James N. McConnaughhay and Arthur C. Beal, Jr., Tallahassee, for Ins. Co. of North America.
Mygnon C. Evans, Temple Terrace, for Florida Citrus Mut.
Bernard J. Zimmerman and Michael M. O'Brien, Akerman, Senterfitt & Eidson, Orlando, for American States Ins., Denny's Restaurant/Self-Insured Services by Scott Wetzel, Iowa Nat. Ins., Nat. Services Industries, Inc., Sentry Ins. Companies and Sun Bank, N.A.
Heskin A. Whittaker and B.C. Pyle of Whittaker, Pyle, Stump & Webster, P.A., Orlando, for Florida Self-Insurers' Fund of Associated Industries of Florida.
Ronald W. Brooks, Brooks, Callahan & Phillips, Tallahassee, for South Central Educational Risk Management Program.
Frederick B. Karl and S. James Brainerd, Tallahassee, for Florida Ass'n of Ins. Agents. Dan F. Turnbull, Jr., Asst. Gen. Counsel, Florida Dept. of Labor and Employment Sec., Tallahassee, for Dept. of Labor and Employment Sec., Div. of Workers' Compensation.
Richard A. Sicking, of Kaplan, Sicking, Hessen, Sugarman, Rosenthal & De Castor, P.A., Miami, for Florida AFL-CIO.
L. Barry Keyfetz, of Keyfetz, Poses & Halpern, Miami, for L. Barry Keyfetz.
Andrew A. Graham and Marjorie E. Smith, Reinman, Harrell, Silberhorn, Moule, Boyd & Graham, Melbourne, for Harris Corp.
Jonathan L. Alpert, Fowler, White, Gillen, Boggs, Villareal & Banker, St. Petersburg, for Florida Farm Bureau Mut. Ins. Co.
*872 Richard G. Davis, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, for Hillsborough County Hosp. Authority.
Charles E. Bentley and C. Kenneth Stuart, Jr., Holland & Knight, Bartow, for Agrico Min. Co., Caronia Claims Service, Inc., Intern. Minerals and Chemical Corp., CTD Corp., St. Regis Paper Co., Tampa Elec. Co., Underwriters Adjusting Co., and USS Agri-Chemicals.
On Rehearing En Banc September 23, 1982.
PER CURIAM.
This workers' compensation appeal presents again a challenge to the sufficiency of work search evidence in support of an award of wage loss benefits. We affirm the order finding that claimant met her obligation under the statute, which provides "the burden shall be on the employee to establish that any wage loss claimed is the result of the compensable injury." (e.s.) § 440.15(3)(b)2, Florida Statutes.
The facts detailed below permit a conclusion that claimant would not have suffered the wage loss in question if her compensable injury had not occurred. We therefore find the statutory requirement of causal connection is met, even assuming, as appellant argues, that claimant did not prove directly that jobs were available which she could not get because of her physical limitations. The appellant employer/carrier relies upon LeHigh Corporation v. Byrd,[1] and other recent decisions based on the stated rule that a work search which is unsuccessful due to unavailability of work precludes compensation because such evidence does not prove a loss due to compensable disability. Although we do not intend to disagree with the results reached in all of those prior cases (which may involve facts or distinguishing statutory standards otherwise substantiating the decisions reached), we do recognize that their stated rationale conflicts with our construction and application of the statutory language first above quoted in the present case. For the purpose of wage loss entitlement we now conclude the LeHigh rule is inapplicable, and find no necessity in this case for discussion of its merit in the context of compensation for total disability, permanent or temporary.[2]
Claimant was injured on August 25, 1979, during the course and scope of her duties as a maid at the Regency Inn. Prior to her accident, the claimant suffered from a preexisting injury to the pelvic area which caused a deformed left leg. The deputy accepted claimant's testimony that she had not been limited by her prior condition except for limping, and that she had always been able to carry out her occupational duties without pain, discomfort or limitation. The record indicates that the appellee sustained a 25% impairment, 5% of which was attributable to the industrial accident.
Claimant was paid $72.50 temporary total disability benefits from August 26, 1979, through December 2, 1979, and from January 3, 1980, through August 4, 1980. Johnson *873 subsequently filed a claim for 100% wage loss benefits for the period beginning August 4, 1980, through the December 10 hearing. The deputy commissioner denied this claim by order of April 24, 1981, based on absence of work search. On May 11, 1981, a hearing was held to decide a claim for wage loss benefits for the period December 10, 1980, through April 10, 1981.[3] The deputy commissioner determined that Johnson had made a good faith effort to obtain employment and that she had been unsuccessful in obtaining employment. The claimant had a limited employment history, having worked only in domestic or related labor. Her treating physician indicated that, as a result of the injury, appellee had to seek lighter employment. Claimant had made a job search during the controverted time at the following places:
1. Florida State Employment Office (January 14, 15, 20, March 15, 20, 28);
2. Eckerd Drug Store (March 14, 18, 20);
3. Exchange Bank of Polk County (March 10, 15);
4. First Federal Savings.
The record also contains a list showing additional places of employment at which appellee sought a job.
On June 5, 1981, the deputy commissioner entered an order awarding the claimant 100% wage loss benefits for the period from December 10, 1980, through April 10, 1981. The employer then filed this timely appeal, raising only the question of whether there was sufficient evidence to sustain the deputy commissioner's order requiring payment of wage loss benefits to the claimant.
Based on claimant's testimony that prospective employers stated "they wasn't hiring," appellant contends claimant's work search was necessarily inadequate and "her inability to obtain work was due to unavailability of work rather than Johnson's injury." (e.s.) The record, however, does not indicate any lack of diligence or good faith such as might conceivably result from an extremely restricted or illogical search. We conclude accordingly that the deputy properly applied those tests within the parameters for work search recently restated in Wright v. Gulf and Western Food Products, 401 So.2d 1316, 1318 (Fla. 1981).
We believe that the reasoning and authorities set forth in the dissenting opinion in Lake County Commissioners v. Walburn, 409 So.2d 153 (Fla. 1st DCA 1982), are dispositive of the issue presented in this case. We also note that the statutory language on wage loss, supra, stands in contrast to that which governs a claimant's burden in establishing permanent total disability, i.e., "the burden shall be upon the employee to establish that he is not able uninterruptedly to ... work due to physical limitations," and no compensation of that character shall be payable "if the employee ... is physically capable of ... gainful employment." § 440.15(1)(b), Florida Statutes. Since the LeHigh rule would effectively limit compensable wage loss to that which results from physical incapacity (as opposed to economic incapacity caused by job disruption accompanying industrial injury), the application of that rule to wage loss would disregard the apparent intent of the legislative standards on causal relation which are framed so distinctly for the two classes of benefits. For wage loss the statute provides simply for general causal relation by covering any such loss which "is the result of the ... injury." If the intent had been to require wage loss from physical incapacity for work (independent of job availability) as an absolute condition to compensation for wage loss, the alternative language would surely have been used.[4] The definition of disability in the act also utilizes a general causal relation concept by referring simply to "incapacity because of the injury to earn ...," and not to incapacity from physical limitations of the injury. *874 Certainly nothing in the statutory framework for wage loss awards evinces an intent to abandon that element of the well settled standard for capacity to earn which takes into account "[i]nability to obtain work of a type which claimant can perform in light of his after-injury condition," Walker v. Electronic Products & Engineering Co., 248 So.2d 161, 163 (Fla. 1971).
We find, accordingly, that the rule stated in LeHigh and its progeny should not govern the evaluation of work search standards for wage loss, and the award by the deputy in this case is therefore affirmed.
ERVIN, SHIVERS and WENTWORTH, JJ., concur.

OPINION ON REHEARING EN BANC
PER CURIAM.
The court of its own motion voted to consider, en banc, the panel's decision in this case. Additional briefs by the parties were requested, submissions by amici curiae were invited, and oral argument was scheduled and heard. The court commends counsel for the parties and those appearing for amici curiae on both sides for the professional and capable manner in which they have responded to the court's request for assistance in resolving the issues in this case. Upon consideration of the briefs and argument, and after further deliberations, a majority of the judges (all of whom participated in the en banc proceeding) voted to uphold the panel's decision, for reasons set forth in the original opinion and further reasons stated below.
The precise issue that has evolved from the many briefs and arguments heard is the effect of economic conditions on the employee's entitlement to wage loss benefits. Preliminarily, we observe that the workers' compensation act has consistently placed on the employee the burden to establish entitlement to compensation, whether it be for temporary partial or total disability, permanent partial or total disability, or loss based upon diminution of wage earning capacity. There is nothing unique, therefore, in the present provision placing the burden on the employee "to establish that any wage loss claimed is the result of the compensable injury." Section 440.15(3)(b)2.
We also preliminarily note the obvious fact that economic conditions are not likely to have a controlling effect on the employee's entitlement to temporary total or permanent total disability under subsections (1) and (2), Section 440.15, of the 1979 act. Just as obvious is the fact that economic conditions in general, or in a particular locale, or with respect to particular segments of the economy, can have a significant effect on the ability of an injured but recovering employee, or a permanently impaired employee, to become reemployed. Significantly, it was not until the 1979 adoption of the wage loss method of compensating workers permanently impaired by industrial accidents that the effect of economic conditions on the employee's ability to secure other employment assumed critical importance. Prior to the amendments, an impaired worker was compensated based upon a formula which took into account the observed economic effect of the injuries sustained. Mims And Thomas Manufacturing Co. v. Ferguson, 340 So.2d 920 (Fla. 1976). No contention is made here that the limited "impairment benefits," Section 440.15(3)(a), are intended to serve the same purpose as the "scheduled benefits" under the old law. Under prior law, it was only when the employee sought enhanced benefits, based upon a showing that his economic loss for an unscheduled injury exceeded the compensation payable for his percentage of anatomical impairment, that conditions of the labor market affecting his employability became particularly relevant.[1] In other *875 words, the pre-1979 permanently impaired claimant was entitled to basic benefits which took into account his projected economic loss, regardless of whether he sought or obtained after-injury employment. Not so under wage loss, because under that concept, the employee is compensated for his or her actual, demonstrable loss. Topeka Inn Management v. Pate, 414 So.2d 1184 (Fla. 1st DCA 1982).
Whether the nonavailability of jobs due to economic conditions is a factor to be considered or ignored in determining the after-injury wages an employee is "able to earn," (Section 440.15(3)(b)2.), is not immediately apparent from a literal reading of the statute itself. The words "able to earn" do not convey a meaning so clear and so precise, standing alone, that they necessarily command an interpretation favoring the position of the employer and carrier, or that of the employee. In the broadest sense, "able to earn" takes into account many factors, including the availability of jobs, and such a broad interpretation is consistent with prior case law, and with the principle which requires a liberal construction in favor of the injured employee.[2]
A broad interpretation is also consistent with the entire text of subparagraph 2., in that, although the words "able to earn" are not generally defined, they are qualified and limited by the remaining language of the subparagraph. Thus, as the statute is read it is seen that the amount the employee is "able to earn" shall not be less than "the sum actually being earned," including sheltered employment. Further, if the employee "voluntarily limits" his income, or "fails to accept employment commensurate with his [or her] abilities," the amount the employee is "able to earn" shall be deemed the amount "which would have been earned" absent limitation of or failure to accept appropriate employment. Had the legislature intended "able to earn" to be further qualified so as to preclude consideration of non-availability of jobs because of economic conditions, it would have been a simple matter for this to have been written into the law. The fact that qualifications and limitations were expressed, as just mentioned, and the one we are requested by the employer/carrier to provide by judicial interpretation was omitted, lends support to the view that no such qualification was intended.
The employer/carrier argue, however, that the final sentence of subparagraph 2. manifests a legislative intent to preclude consideration of economic conditions. That sentence reads: "Whenever a wage-loss benefit as set forth in subparagraph 1. may be payable, the burden shall be on the employee to establish that any wage loss claimed is the result of the compensable injury." (emphasis supplied) The employer/carrier urge that if, as contended by the employee, and as determined by the original panel which decided this case, the burden of proving a causal relation between the industrial accident and the wage loss could be satisfied by proving "economic dislocation" or "job disruption" by reason of the compensable injury (422 So.2d 873), *876 the legislature surely would have written it that way by using the word "accident," instead of "injury," so that the final sentence of subparagraph 2. would read, in pertinent part: "... the burden shall be on the employee to establish that any wage loss claimed is the result of the compensable accident." While this argument has some superficial appeal, we do not believe the choice of words in this particular sentence holds the key to this issue.[3] It is observed in this connection that it is not the "accident" that is compensable, but instead is the "injury" from the accident, albeit it is not the injury alone, but actually the temporary or permanent impairment from the injury that establishes the eligibility of the employee to claim wage loss benefits. Furthermore, we think a more plausible and reasonable interpretation of the burden of proof provision is found by relating it to the requirement of showing a causal relation between the injury and a change in employment status, and to the specific qualifications and limitations on wage loss entitlement mentioned in the statute. That is to say, the burden of proof provision is to require the employee to go forward with evidence showing a change in employment status due to the injury, and an adequate and good faith attempt to secure employment commensurate with his abilities so as to establish, prima facie, an economic loss and to show that he or she has not voluntarily limited his or her income or failed to accept employment commensurate with his or her abilities. Once this evidence has been presented by the employee, the burden of proving that the employee has refused work or voluntarily limited his or her income is on the employer. Pompano Roofing Co., Inc. v. O'Neal, 410 So.2d 971, 972 (Fla. 1st DCA 1982); Vida Appliances, Inc. v. Gates, supra, (footnote 2, this opinion).
The various arguments focusing on the wording of the statutes fail to provide a convincing "technical" solution to the issue at hand.[4] Other (and perhaps more fundamental) considerations lend support to the original panel's decision which rejects the notion, urged by the employer/carrier, that unavailability of jobs due to economic conditions precludes recovery of wage loss benefits. As pointed out by the dissenting opinion in Walburn, 409 So.2d 153, 155, adopted by the majority in Regency, a permanently impaired employee is "unable to test the limits of his capacity to work" if his inability to obtain work is due to the unavailability of jobs. Adherence to the view espoused by the employer/carrier would place the impaired but unemployed worker in somewhat of a dilemma, because he would be effectively deprived of benefits  which the act purports to bestow upon permanently impaired workers  for reasons which bear no relation to his impaired, after-injury physical condition, nor to his or her own good faith efforts to become reemployed. Furthermore, the employer/carrier's view is fundamentally flawed by its failure to take into account the aspect of "certainty" of recovery which is said to contribute to the constitutional validity of the worker's compensation system. Acton v. Fort Lauderdale Hospital, 418 So.2d 1099 *877 (Fla. 1st DCA 1982), 7 FLW 1699, (opinion filed August 11, 1982).
Our review has convinced us that by adopting the wage loss concept, the legislature by necessary implication adopted the "work search" test as the means for determining the employee's post-injury capacity to earn.[5] As recently pointed out in Flesche v. Interstate Warehouse, 411 So.2d 919, 922 (Fla. 1st DCA 1982), the "so-called `work search' test is merely the evidentiary vehicle by which employability, or lack of it, is proven." It was not until this court's Lehigh and Walburn decisions, which post dated the wage loss statute, that the evidentiary requirements of a good faith work search were considered to require proof that inability to find employment was not due to unavailability of jobs because of economic conditions or otherwise. In fact, the unavailability of jobs has been viewed as evidence supporting recovery for a loss of wage earning capacity, rather than as defeating it. See, United States Sugar Corporation v. Hayes, 407 So.2d 1079 (Fla. 1st DCA 1982). Although as pointed out in the Flesche opinion, no precise definition of an "adequate job search" can be devised, the general evidentiary parameters of work search evidence were expanded by Lehigh and Walburn beyond what should be realistically required, as indicated by prior decisions. For example, in Milex Southern Medical, Inc. v. Osuna, Industrial Relations Commission Order 2-3763 (1979), cert.den. 383 So.2d 1200 (Fla. 1980), the Commission indicated that such evidence should include the names of the businesses contacted, the type of work sought, the number of contacts made, and the time frame within which work was sought. There are, of course, an infinite number of facts and circumstances which may bear upon the adequacy or good faith of a work search, but the mere articulation of some work search deficiency under the facts of a particular case does not convert that element into an *878 essential evidentiary requirement to be met by affirmative proof in every case. For example, in Lehigh, where it appeared that the employee remained unemployed for reasons other than because of his disability, his work search evidence was held inadequate. This does not mean, however, as pointed out in Florida Mining and Minerals v. Brantley, 418 So.2d 352 (Fla. 1st DCA 1982), that direct proof by the employee that he has been rejected for a job because of his disability is required as an essential evidentiary element in proving wage loss. Finally, with respect to the Lehigh and Walburn decisions, we refer to that portion of the Regency opinion (Regency, footnote 1), which points out the distinguishing features of the cases cited as authority in the two opinions, without repeating that discussion here.[6]
Turning to another point, that is, the perceived effects of the panel's decision, the employer/carrier and amici curiae supporting their position are virtually unanimous in contending that the decision converts workers' compensation, in times of economic recession, into unemployment benefits. After careful consideration, we are unable to agree. First, the 1979 act itself contains no indication that the legislature, in that year, devised and enacted a system of reparations for injured workers that would fulfill its purposes in time of relative economic prosperity, but would automatically withhold or suspend such reparations in time of economic depression. Secondly, unemployed workers (candidates for unemployment compensation) do not suffer compensable industrial accidents; only employed workers do. The employed worker is an integral part of the productive machinery of society and he is entitled to be treated as still belonging to that segment of the economy after a compensable accident, rather than categorized as a member of the unfortunate group whose unemployed status is due solely to economic conditions. To regard a workers' compensation claimant otherwise would represent a drastic departure from the long-accepted doctrine that the workers' compensation law is intended to relieve society of the burden of caring for injured workers and to place the responsibility on the industry served. Port Everglades Terminal Co. v. Canty, 120 So.2d 596 (Fla. 1960). Thirdly, unemployment benefits are of more limited amount and duration than workers' compensation benefits,[7] and these benefits are not provided as an alternative to any other form of legal redress, as is true of workers' compensation. See, Acton v. Fort Lauderdale Hospital, supra. The law enacted in 1979 actually combined workers' compensation and unemployment benefits to a limited extent by providing that an injured worker may be eligible to receive both workers' compensation and unemployment benefits. Section 440.15(11).[8] It is *879 significant that the court in Edwards v. Metro Tile Company, 133 So.2d 411, 412 (Fla. 1961), when faced with the issue (although in a different context than in this case) of whether a claimant could simultaneously accept workmen's compensation and unemployment benefits, declared: "The fact that he is not able to obtain a job during the period of alleged disability will not preclude him from receiving the benefits of both types of protection" (emphasis supplied). Finally, the interpretation advocated by the employer/carrier would relegate the permanently physically impaired but unemployed worker to the same status as the unimpaired unemployed worker, thereby depriving those workers' compensation claimants of a remedy for work-related injuries, and seriously affecting, in our judgment, the rational balancing of the rights and interests of both employers and employees which is necessary to give validity to the wage loss concept. Acton v. Fort Lauderdale Hospital, supra; Chapman v. Dillon, 415 So.2d 12 (Fla. 1982); Lasky v. State Farm Insurance Company, 296 So.2d 9 (Fla. 1974); Kluger v. White, 281 So.2d 1 (Fla. 1973); Carr v. Central Florida Aluminum Products, 402 So.2d 565 (Fla. 1st DCA 1981); Perez v. K-Mart Corp., 418 So.2d 1052 (Fla. 3rd DCA 1982).
We hold that the unavailability of jobs due to economic conditions does not preclude recovery of wage loss benefits, and, accordingly, it is not necessary for a wage loss claimant to present evidence that his refusal for employment was not due to unavailability of jobs resulting from economic conditions. Any other decision on this issue would convert wage loss hearings under the act into seminars on economics, requiring the gathering and presentation of complex information beyond the ken of all but the most schooled in the field of economics, and certainly beyond the resources and ability of the average worker to present or defend against. The sheer impracticability of burdening wage loss claim procedure with such evidence is obvious. Not the least of the difficulties is the absence of any guide or standard of measure to determine when conditions in a given area have reached the "economic depression" or "recession" stage.[9] Moreover, even if the question might be considered one of fact to be established to the satisfaction of the deputy commissioner, just as are other factual issues, this court is not at liberty to create a rule whereby an injured employee's entitlement to workers' compensation benefits hinges on after-injury economic conditions.
We have not overlooked the contentions that our decision will drastically affect workers' compensation insurance rates. Whether these fears are founded or unfounded, we are not prepared to say. Our decision is based upon what we consider to be legal, not actuarial, considerations. We are concerned, however, that those arguing for the appellants have raised the specter of hundreds (perhaps thousands) of minimally impaired employees receiving full wage loss benefits over a period of years, even to the maximum (approximately ten years) provided by the law, because of our decision.[10] *880 This and other arguments in similar vein only serve to emphasize, in our opinion, the survival of an attitude of adversariness, instead of cooperation, that in the past has characterized the administration of the workers' compensation law[11]. We suggest that it lies within the power of the participants in the workers' compensation system itself to avoid wage loss claims which might be considered unwarranted or excessive by concentrating their efforts on rehabilitation and reemployment of injured workers, rather than by aiming for technical interpretations by which it is hoped to defeat or diminish the recovery of benefits by the injured employee.[12]
The order appealed from is AFFIRMED.
ROBERT P. SMITH, Jr., C.J., and McCORD, MILLS, ERVIN, BOOTH, LARRY G. SMITH, SHIVERS, SHAW, WENTWORTH, JOANOS, THOMPSON and WIGGINTON, JJ., concur.

OPINION ON MOTION FOR REHEARING OF EN BANC DECISION
PER CURIAM.
Appellants' motion for rehearing asserts that the court has overlooked the facts and the law. We disagree.
There were two wage loss hearings. The deputy commissioner denied the wage loss claim for the period covered by the first hearing, primarily because of an inadequate work search. Regency's job offer was made prior to the first hearing, and did not tell claimant what the job would consist of. Regency had previously refused to reemploy claimant and had told her there would be no light work available. The claimant's medical release specified light work, and claimant knew she could not do maid's work, which was beyond her physical capabilities.
Wage loss claims were filed for the period subsequent to the first hearing. The claimant checked with the state employment service on several occasions and conducted a work search which was commensurate with her means and abilities. Her attorney also repeatedly requested that Regency reemploy claimant, or that Regency and the carrier provide rehabilitation, retraining, or job placement counselling and assistance. The E/C "stonewalled," provided neither, and offered no explanation for their refusal. The deputy commissioner found claimant's job search sufficient, and awarded wage loss benefits. His order contained the finding that the employer "has not, to the date of this hearing, offered claimant employment." The correctness of this finding, for the period covered by the wage loss benefits awarded, is not challenged in this appeal. There is not a scintilla of evidence that Regency held a job open for the claimant, *881 and therefore no possibility of prejudice to Regency by the claimant's delay in actively seeking (for the second time) reemployment by Regency.
Wage loss claims are filed and determined on a month-by-month basis. Deltona Corporation v. Morris, 418 So.2d 1274 (Fla. 1st DCA 1982). The failure to qualify for wage loss for one period does not bar recovery of wage loss benefits for a subsequent period. The claimant clearly demonstrated repeated requests for reemployment and an adequate job search. The burden shifted to the E/C to prove that the claimant voluntarily limited her income or failed to accept employment commensurate with her abilities. Pompano Roofing Co., Inc. v. O'Neal, 410 So.2d 971 (Fla. 1st DCA 1982). These issues presented questions of fact for determination by the deputy commissioner as to which no error has been shown. See, Clay Hyder Trucking v. Persinger, 416 So.2d 900 (Fla. 1st DCA 1982).
The motion for rehearing of the en banc decision is DENIED.
ROBERT P. SMITH, Jr., C.J., and McCORD, ERVIN, BOOTH, SMITH, L., SHIVERS, SHAW, WENTWORTH, JOANOS and WIGGINTON, JJ., concur.
MILLS, J., concurs specially with opinion and THOMPSON, J., concurs.
MILLS, Judge, concurring specially:
Although I would deny the E/C's motion for rehearing, because of the far-reaching effects of the decision in this case, I would certify the following question to the Supreme Court of Florida as one of great public importance:
Should the unavailability of employment due to economic conditions be a factor in determining entitlement to wage-loss benefits?
NOTES
[1] 397 So.2d 1202 (Fla. 1st DCA 1981). That opinion states a claimant must show either (1) "that his work search was successful, but that he was unable to perform the work [or (2)] he would have to show that his work search was unsuccessful due to his disability (rather than unavailability of work)." 397 So.2d 1204. Cited for this proposition are Teleprompter, Inc. v. Springer, IRC Order 2-3439 (May 19, 1978), and Westco Aluminium, Inc. v. Johnson, 8 FCR 170, cert. den., 289 So.2d 738 (Fla. 1974). In each of these cases the unavailability of work in question related to a period after claimant had returned to work and lost employment in a general lay-off unrelated to his capabilities, or had relinquished employment for reasons unrelated to his injury or capability. Plainly, such specific proof permits a conclusion that unemployment is not injury-related, quite consistent with a general rule that causal relation may be shown through economic dislocation as well as physical incapacity.
[2] See also Lake County Commissioners v. Walburn, 409 So.2d 153 (Fla. 1st DCA 1982); and Burger King Corp. v. Stark, 401 So.2d 1173 (Fla. 1st DCA 1981). To the extent that Walburn (in addition to reversing total disability benefits) found insufficiency of work search for wage loss "because work was unavailable," 409 So.2d at 154, our decision in the case at bar necessarily recedes from that portion of the opinion in principle, even if distinguishing facts might arguably justify the majority decision there. This conflict serves as the basis for treatment of the current case by the court en banc pursuant to Rule 9.331.
[3] Flesche v. Interstate Warehouse, 411 So.2d 919 (Fla. 1st DCA 1982).
[4] See Ken Lones Landscaping v. Tucker, 395 So.2d 272 (Fla. 1st DCA 1981), for application of the physical incapacity standard to temporary total disability. We do not here consider all distinctions which may affect loss of earnings before and, as in the present case, after maximum medical improvement.
[1] Coca-Cola Company  Foods Division v. Lucien, 399 So.2d 1023 (Fla. 1st DCA 1981), discussed in oral argument in the present case, illustrates the impact of evidence concerning job availability as it relates to the adequacy of a work search. Coca-Cola is not a 1979 wage loss case, however, and although the lack of "job openings" is discussed in the opinion, there is no indication that general economic conditions were implicated in the decision of the court.
[2] Kerce v. Coca-Cola Company  Foods Division, 389 So.2d 1177 (Fla. 1980), rejected the employer/carrier's contention that the seasonal nature of employment had to be taken into account in determining pre-injury wage earning capacity. Speaking through Mr. Justice England, the court stated (at 1178): "In approaching the issue posed here we are guided by the `most favorable remedy' doctrine, which provides that `where the Act is susceptible of disparate interpretations, the court will adopt the construction which is most favorable to the employee.' Henderson v. Sol Walker & Co., 138 So.2d 323, 327 (Fla. 1962)." Thus, we reject in the present case, arguments which urge the reading of "able to earn" in its narrowest sense, that is, as referring only to the employee's post-accident physical capabilities. The requirement that post-accident earnings shall include consideration of earnings from "sheltered employment," (440.15(3)(b)2.) also serves to dispel any notion that "able" is intended to take into account only the physical ability to work. This court has very recently rejected the contention that evidence merely tending to show the "ability to earn" a certain sum may be used to reduce wage loss benefits where an adequate work search has been conducted and no employment was obtained, in the absence of proof by the employer/carrier that the employee voluntarily limited his income or failed to accept a job within his abilities. Vida Appliances, Inc. v. Gates, 416 So.2d 1186 (Fla. 1st DCA 1982).
[3] Able counsel for amicus curiae Risk Management Services, Inc., while advancing the purely semantical argument under discussion, also candidly asserts that the issue involves a "policy question" which is "too important to turn on such a fine line," and urges that the policy question should be decided in accordance with "what is the best course" for Florida's work force and its industry, keeping in mind that all workers' compensation systems are characterized by their "mutual tradeoffs" (Risk Management brief, page 3). In response, we would point out that this court is not the final arbiter of what is the "best course" on any given issue except in a narrowly limited way, since generally speaking what is wise, prudent, and advantageous are matters exclusively within the domain of the Legislative Branch.
[4] The parties have not referred to any statutory provision concerning the effect of changing economic conditions, if any, on eligibility for wage loss benefits. However, we note that Section 440.15(3)(b)5. and 6. provide for an adjustment on account of inflation. We also have the view that changing economic conditions are necessarily reflected, at least to some extent, in the "statewide average weekly wage," (Section 440.12(2), (a) and (b)), and in the pre-injury wages received by an employee, which directly govern the amount of wage loss benefits recoverable.
[5] Jonathan L. Alpert, able counsel and one of Florida's recognized authorities in the field of workers' compensation law, disagrees, and in fact insists that one of the purposes underlying the 1979 amendments was the elimination of the work search test (brief of amicus curiae, Florida Farm Bureau Mutual Insurance Company, page 8). His view is not shared by other amici curiae who submitted briefs. Professor Alpert's disenchantment with the job search test may well be justified, and the plethora of opinions of this court dealing with work search evidence all too clearly demonstrate that it is a problem area in the law. It may develop that some additional legislative solutions, touching perhaps on the work search requirement, may eventually be required to perfect the wage loss concept. However, we find no express or implied legislative intent to abolish the work search test, and we are thus guided by the rule that in the absence of a clear indication to the contrary, we must presume that the legislature has no intention to mandate the abandonment of the evidentiary test for employability which had become "enshrined" (as Professor Alpert concedes) in Florida compensation jurisprudence prior to 1979. (See, Exxon Company, U.S.A. v. Alexis, 370 So.2d 1128 (Fla. 1978); City of Hollywood v. Castora, 380 So.2d 1148 (Fla. 1st DCA 1980)). Professor Alpert proceeds further in his argument to urge that the determination of what a claimant is "able to earn" after an accident, "... can best be made by examining the claimant's actual physical impairment, age, industrial history, training and education, motivation, work experience, work record, diligence and the like" (Florida Farm Bureau brief, page 8). Regardless of its merit, this argument seems to urge a return to a subjective test (see, Ball v. Mann, 75 So.2d 758, 760 (Fla. 1954)) to determine the economic effect of injury, an approach the wage loss concept was designed to avoid. See, Sadowski, et al., "The 1979 Florida Workers' Compensation Reform: Back To Basics," 7 Fla.St.U.L. Rev. 641, 649-653. A specific example of the act's turning away from subjective factors is found in the provision that the amount an employee is "able to earn" shall in no case be less than "the sum actually being earned," including earnings from "sheltered employment." Section 440.15(3)(b)2. We submit, however that consideration of the factors enumerated by Professor Alpert is still required, as in the past, in determining the adequacy and good faith of the job search, and in determining under the 1979 amendments whether the employee has voluntarily limited his employment or failed to accept employment commensurate with his abilities. Finally, with respect to Alpert's suggestions (Farm Bureau brief, pages 18, 19) that the court should devise a rule for determining entitlement to wage loss benefits (when the employee has not returned to work) based upon a series of presumptions, using the employee's physical impairment rating and other factors, we must point out that the proffered solution is one appropriate to legislative, rather than judicial action.
[6] Teleprompter, Inc. v. Springer, IRC Order 2-3439 (May 19, 1978), and Westco Aluminum, Inc. v. Johnson, 8 FCR 170 (1973), cert. den. 289 So.2d 738 (Fla. 1974), cited as authority in Lehigh, dealt with temporary disability benefits. Teleprompter rejected a claim of total wage earning capacity loss, but accepted a finding that the claimant had "some degree" of diminution of wage earning capacity. Westco, at 172, cites three earlier Florida Supreme Court cases on the requirement that claimant must prove that his inability to obtain employment is "due to his physical capacity." It is significant, however, that examination of the opinions in those three cases reveals that neither deals with the question of unavailability of jobs as a cause of wage loss. See, Concord Realty Corp. v. Romano, 159 Fla. 1, 30 So.2d 495 (1947); Clark v. Western Knapp Engineering Co., 190 So.2d 334 (Fla. 1966); and City of Hialeah v. Warner, 128 So.2d 611 (Fla. 1961).
[7] Parenthetically, we feel that it is fair to observe that the duration and amount of wage loss claims of any injured employee will vary in direct proportion to the extent to which employers and carriers realistically accept the obligation to rehabilitate, if necessary, and to otherwise aid in the reemployment of the injured worker. See, Holiday Care Center v. Scriven, 418 So.2d 322 (Fla. 1st DCA 1982); Trend Management, Inc. v. Boyd, 417 So.2d 732 (Fla. 1st DCA 1982); Hurricane Fence Industries v. Bozeman, 413 So.2d 822 (Fla. 1st DCA 1982); Viking Sprinkler Co. v. Thomas, 413 So.2d 816 (Fla. 1st DCA 1982).
[8] Section 440.15(11)(b) provides that if an employee is entitled to both wage loss and unemployment compensation benefits, the unemployment benefits shall be primary and the wage loss benefits supplemental only, and the sum of the two shall not exceed the amount of wage loss benefits otherwise payable. Subparagraph (a) of that section provides that no workers' compensation benefits are payable for temporary total or permanent total disability for any week in which the injured employee has received, or is receiving, unemployment compensation benefits.
[9] Certainly evidence that a job was not obtained because employers were "not hiring" (as the employee in this case testified) does not establish unavailability of jobs due to economic conditions. We take it as not subject to serious question that many businesses and industries at any given time, in any given locality, even in times of relative economic prosperity may be "not hiring" when a particular person applies for work. If the claimant's search for work was sufficiently extensive and intensive, then in order to defeat her wage loss claim it was incumbent upon the employer or carrier to show that jobs were available to her with employers who "were hiring." Wright v. Gulf And Western Food Products, 401 So.2d 1316 (Fla. 1981).
[10] We find very little of value in such arguments. It can just as well be presumed that, for the most part, the "minimally impaired" employee will be rehired in the same job by the same employer, and we may also assume that in many instances even the severely impaired worker will be rehired (with or without prior rehabilitation) by the same or other employer at wages equal to his pre-injury earnings, thus drawing little or no benefits from the workers' compensation system after reaching maximum medical improvement. Perhaps even more significant is the fact that if we followed the reasoning adopted by the employer/carrier to its logical conclusion, in times of economic recession not just the minimally impaired worker but also the severely impaired worker would be deprived of all wage loss benefits.
[11] The view that the 1979 amendments mandate a different approach to the administration of workers' compensation is nowhere more constructively reflected than in Holiday Care Center v. Scriven, 418 So.2d 322 (Fla. 1st DCA 1982), where the court stated:

The common incentive of both unemployed worker and employer/carrier to reestablish gainful employment serves the self-executing goals of chapter 440 and, in the employer and carrier, militates against the laissez-faire attitude condemned by this Court in Florida Erection Services, Inc. v. McDonald, 395 So.2d 203, 211 (Fla. 1st DCA 1981).
* * * * * *
A carrier in active contact with a recovering but unemployed worker, monitoring the adequacy and progress of the work search, is a carrier indirectly assisting the search and abundantly serving the purposes for which chapter 440 exists. A former employer likewise serves who responds affirmatively and in its own interests to the worker's conscientious application for reemployment.
[12] "Whenever the tissue of life is woven of legalistic relations, there is an atmosphere of moral mediocrity, paralyzing man's noblest impulses." Solzhenitsyn, Harvard Commencement Speech, quoted in 31 Mercer Law Review, No. 2, page 403 (Winter, 1980).