444 So.2d 978 (1983)
D.L. AMICI COMPANY and American Mutual Insurance Company, Appellants,
v.
James JACKSON, Appellee.
No. AQ-362.
District Court of Appeal of Florida, First District.
December 29, 1983.
Rehearing Denied February 13, 1984.
Stephen E. Tunstall of Underwood, Gillis, Karcher & Valle, Miami, for appellants.
Richard A. Sadow of Sadow, Lynne & Gonzales, North Miami, for appellee.
THOMPSON, Judge.
The employer/carrier (E/C) appeal a compensation order contending that the deputy commissioner (deputy) erred in awarding wage loss benefits from January 28, 1982 to May 1, 1982 because claimant was laid off on January 27, 1982 as a result of economic conditions, not as the result of physical limitations related to his accident. We reverse.
The distal phalanx of claimant's right fifth finger was amputated in a compensable accident on September 3, 1981 while claimant was laying water pipe. Dr. Nadler, an orthopedist, first saw claimant on September 3, 1981 at the hospital and performed the primary repair. The severed tip of claimant's finger was not sutured back onto his finger. Claimant remained in the hospital for several days for intravenous antibiotics and observation. On September 25, 1981 Dr. Nadler recommended to the claimant that he return to light duty work. When he saw claimant on October 23, 1981 for a final examination, he determined that claimant had reached maximum *979 medical improvement (MMI) on that date, and released him to return to his regular work without restrictions. Dr. Nadler gave claimant a three percent permanent impairment rating.
Claimant returned to work with the employer on October 10, 1981 at the same rate of pay he was making prior to the accident and worked until January 27, 1982, when he was laid off because of the employer's shortage of work. Claimant subsequently filed a claim for wage loss benefits from January 28, 1982 to the date of the claim and continuing. The E/C controverted the claim for wage loss benefits on the grounds that claimant's unemployment was due to economic reasons rather than to his injury from the industrial accident. At the hearing claimant testified he made a job search from the time of his discharge until May 1982. However, he did not look for any jobs after May because he felt he had a good chance of obtaining a job with the post office where he had an application pending. The employer's payroll supervisor testified that claimant, along with two others, was discharged in January 1982 because a stoppage of the kind of work claimant was doing necessitated that three people be discharged. The payroll supervisor further testified that they were pleased with claimant's performance after he returned to work in October 1981, following the accident, and that he was not discharged because of his injury. The deputy found that the claimant had made a good faith attempt to secure employment and had conducted a good faith job search from January 28, 1982 through May 1, 1982 and awarded wage loss benefits for that period of time. He further found that the claimant had not made an adequate and good faith attempt to secure employment subsequent to May 1, 1982, and denied wage loss benefits subsequent to May 1, 1982 until claimant again met his burden of conducting a good faith job search. With regard to the claim for wage loss benefits, the deputy specifically found "that the Claimant worked for the Employer herein, although in pain and discomfort on manhole covers rather than on pipe fitting until he was layed [sic] off due to economic reasons." (emphasis added).
The E/C, relying on Citrus Central v. Parker, 423 So.2d 610 (Fla. 1st DCA 1982) and Regency Inn v. Johnson, 422 So.2d 870 (Fla. 1st DCA 1982), pet. for rev. den., 431 So.2d 989 (Fla. 1983) contend that an injured claimant who receives a disability rating and returns to the same job making the same money after the accident and who is subsequently laid off for economic reasons, is not entitled to wage loss benefits. Citrus Central and this case are almost factually indistinguishable. In each case after reaching MMI, the claimant returned to work for the employer by whom he had been employed at the time of the accident at the same or a greater wage until being discharged for economic reasons. Citrus Central found there was no evidence to support the finding that claimant's layoff had any causal connection to his prior injury or subsequent partial disability and limitations. Accordingly, the award of wage loss benefits was reversed. In this case there is no evidence in the record to support a finding that claimant's layoff was a result of anything other than economic or business conditions or that it was in any way related to his injury. Since there is no causal connection between the claimant's discharge and his injury, the award of wage loss benefits must be reversed.
Claimant contends that although the E/C rely on Regency Inn, they did not quote the following language from Regency Inn:
We hold that the unavailability of jobs due to economic conditions does not preclude recovery of wage loss benefits, and, accordingly, it is not necessary for a wage loss claimant to present evidence that his refusal for employment was not due to unavailability of jobs resulting from economic conditions.
422 So.2d at 879.
Regency Inn interpreted § 440.15(3)(b)2., Fla. Stat. (1979), which specifically places the burden "on the employee to establish that any wage loss claimed is the *980 result of the compensable injury," as requiring the employee to go forward with evidence that a change in his employment status was due to the injury and that he had made an adequate good faith attempt to secure employment commensurate with his ability. Once the employee presents such evidence, the employer has the burden of proving that the employee has refused work or voluntarily limited his income.
The claimant did not meet his initial burden of showing that his change of employment was due to his injury. In Regency Inn the claimant was advised by her doctor to seek lighter work because of her injury. In this case the claimant's change of employment status was due to economic conditions that resulted in a shortage of work by the employer and no need for his services. The claimant therefore would not qualify for wage loss benefits under Regency Inn.
The award of wage loss benefits is reversed and the question of attorney's fees is remanded to the deputy for reconsideration of the amount to be awarded.
REVERSED.
NIMMONS, J., concurs.
ERVIN, C.J., specially concurs.
ERVIN, Chief Judge, specially concurring.
A great potential for abuse may be created by our court's decisions in both this case and in Citrus Central v. Parker, 423 So.2d 610 (Fla. 1st DCA 1982), if these opinions are understood to say that an employer's submitted reason for a dismissal conclusively determines the issue of a claimant's entitlement to wage-loss. Such an interpretation would aid an unscrupulous employer, who advances the stratagem that the employee's layoff was occasioned solely by economic motivations, and was completely unrelated to the work-related injury, to avoid his responsibilities to pay wage-loss benefits to a permanently impaired worker. In my judgment the deputy commissioner still has the right to weigh the economic-motive explanation offered by the employer for the worker's termination, against other evidence suggesting that the discharge may have been otherwise.
I therefore maintain that this court's opinions do not preclude deputies from rejecting an employer's bald assertions of economic layoffs unrelated to injury, if the weight of the evidence convinces them that the offered assertion is nothing more than a sham. Such evidence might include, for example, the short length of time between the worker's return and his discharge, the extent of the permanent impairment, the fact that the physically impaired employee was the only one of a relatively large work force to be terminated, and any physical limitations imposed by the treating physician upon the employee's resumption of work.
The order now before us, however, apparently accepts the employer's reason for the layoff as having been offered in good faith, but nevertheless finds that the employee was entitled to wage-loss only because he had suffered some degree of permanent impairment which had lasting, residual effect.[1] This fact alone, under Citrus Central and the majority's opinion, is not sufficient evidence enabling the employee to meet his burden "that any wage loss claimed is the result of the compensable injury." § 440.15(3)(b)2, Fla. Stat. (1981).
I have additional reservations about the effect of the majority's opinion which is susceptible to the interpretation of precluding all compensation for wage-loss at any time in the future without regard to a change in circumstances. Entitlement to wage-loss, of course, must be determined on a monthly basis. See Section 440.15(3)(b), Florida Statutes (1981). I strongly doubt that the majority intends to bar in perpetuity any such request simply because a layoff is attributable to a reason other than industrial injury. In my judgment the majority's opinion is more properly read as holding that the unrelated layoff in such context prevents an assumption *981 (without proof) that the injury or its residuals contributes to the unsuccessful ensuing job search. Stated more simply, our decision, like that in Citrus, rests on the basic statutory requirement that wage-loss claimed for any month shall be "the result of the compensable injury." § 440.15(4)(b), Fla. Stat. This court's articulation of the claimant's prima facie burden in Regency Inn v. Johnson, 422 So.2d 870, 876 (Fla. 1st DCA 1982), pet. for rev. den., 431 So.2d 989 (Fla. 1983), emphasized the need for evidence on both work search and "a change in employment status due to the injury." (e.s.) It seems clear that a compensable injury may in many circumstances contribute to either the commencement or continuance of a period of unemployment. As a matter of simple logic, then, proof of an unrelated commencement of unemployment (layoff) should not foreclose the issue of causal connection for a later wage-loss request, although such a circumstance may no doubt be pertinent. Regency's reference to a causally connected "employment status" would certainly permit proof that an injury contributed to wage-loss during a period of continued unemployment, even where an unrelated layoff may have initiated that status. Lasher Milling Co. v. Brown, 427 So.2d 1034 (Fla. 1st DCA 1983).
With the reservations I have expressed, I concur in the result reached by the majority.
NOTES
[1] The treating physician assessed a permanent impairment rating of three percent.