**In the Matter of GEORGE HUNT, INC., Debtor.**

**Bankruptcy No. 82–1969.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 4, 1986.

C. Kathryn Preston, Tampa, Fla., Nancy L. Cavey, St. Petersburg, Fla., for debtor.

Kenneth Stuart, Lakeland, Fla., Ronald Swartz, Tampa, Fla., for Edward B. Genevish.

## ORDER ON OBJECTION TO CLAIM OF EDWARD GENEVISH

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is an Objection To Claim Of Edward Genevish (Genevish), a creditor who seeks to recover workers' compensation benefits under Chapter 440 of the Florida Statutes from his employer, George Hunt, Inc., the Debtor in the above-styled proceeding. The facts relevant to a resolution of the matter under consideration, as established at final evidentiary hearing, may be summarized as follows:

Genevish is a forty-six year old male whose primary occupational experience has been in the fields of painting, sandblasting and carpentry. On August 7, 1981 Genevish, an employee of the Debtor, was injured during the course and in the scope of his employment. As a result, Genevish sustained a left wrist fracture, right wrist fracture, a fractured right elbow and a concussion. This injury was diagnosed as a severely comminuted fracture into the elbow joint "with multiple pieces". A surgical procedure under general anesthesia was required to repair the fracture and Genevish's arm has over one dozen screws and two to three plates in it which provide support over the area where the bone was crushed.

According to medical testimony, Genevish reached maximum medical improvement on December 31, 1982, with a permanent partial impairment of eleven percent of the body as a whole based on the AMA *Guides To The Evaluation Of Permanent Impairment.* Genevish cannot lift over fifteen to twenty pounds and, if lifting is required for fifteen to twenty minutes, he can only lift ten pounds. Genevish cannot use his arm in a raised position for more than thirty seconds at a time and he is not able to use percussion tools such as a hammer. Based on the injury and its residuals and Genevish's skill and employment background which involves the physical activities described, Genevish is no longer able to pursue his previous occupation.

After the accident, Genevish attended a rehabilitation training program approved by the Debtor to learn the techniques of being a draftsman. Records custodian for Pinellas Vo-Tech Institute (PVTI), Paul Frey, provided Genevish's student records which reveal that he was enrolled at PVTI on March 9, 1982 and attended the architectural drafting program from March 9, 1982 through May 14, 1982; May 17, 1982 through July 14, 1982 and August 9, 1982 through October 8, 1982. Genevish enrolled in class for the period from October 12, 1982 through December 16, 1982 but last attended class on November 22, 1982. Genevish asserts that he stopped attending class when the Debtor stopped making compensation benefits on November 12, 1982. However, records from PVTI indicate that the Debtor withdrew from PVTI on December 2, 1982 because of personal illness.

The claim of Genevish under consideration is based on several items which are as follows: a claim for temporary partial disability benefits from November 12, 1982 through November 31, 1982; a claim for loss of wages from January 1, 1983 through October 31, 1985; a claim for reimbursement of the past medical bills owed to Town and Country Hospital in the amount of $85.75 and $50.00, and a claim for reimbursement for the bill of the Hillsborough Emergency Medical Service in the amount of $70.00 and to David Schulak, M.D. in the amount of $252.00. Genevish also claims the right to payment of vocational rehabilitation expenses, penalties, interest, costs and attorney fees. Following the accident, Genevish continuously received workers' compensation benefits until this bankruptcy proceeding was initiated by the Debtor.

The record reveals that Genevish claims to have searched for work every day since he left school by calling friends, looking in newspapers, phone books, and by periodi-

cally contacting Florida State Employment. However, Genevish did not keep a list of places where he applied for employment in December, 1982; nor could he state where he looked for work, the type of work he was seeking, or the number of contacts he made and the time frame during which he was attempting to obtain employment.

Genevish's earnings during this period were limited to draw and profits he received in connection with a construction of a home for his daughter. It was not until January, 1984 that he first obtained employment and worked as a draftsman for several employers until March, 1984 when he started his own business of drafting, carpentry, framing and trim work. He does not perform any of the physical work required but has one full time employee and from time to time hires temporary help as need arises.

The Debtor objected to the claim for temporary partial disability benefits from November 12, 1982 through November 31, 1982 on the basis that (1) Genevish failed to conduct a good faith job search (2) Genevish failed to timely provide the Debtor temporary partial disability forms with the job search logs (3) there is no causal relationship between Genevish's injury and his inability to find employment.

In addition, the Debtor also objected to the claim of Genevish for wage loss from January 1, 1983 through October 31, 1985 on the basis that (1) Genevish failed to conduct a good faith job search and to provide the Debtor with wage loss forms and job search logs (2) Genevish voluntarily limited his income by failing to look for more renumerative employment by limiting his draw and profit on a house he constructed for his daughter, and by failing to cooperate with vocational rehabilitation and (3) there is no causal relationship between Genevish's injury and inability to find employment.

The primary issue before the Court is Genevish's entitlement to recover wage loss benefits pursuant to § 440.15(3)(b). This issue was considered extensively by the First District Court of Appeals in the case of *City of Clermont v. Rumph,* 450 So.2d 573 (Fla. 1st DCA 1984). That Court found as follows:

". . . . The statute does not impose (and we do not consider the effect of such an attempt) any burden on claimant to show that the compensable impairment was the sole cause of wage loss, and we find no merit in appellant's argument that "it was incumbent on the claimant to produce live (sic) testimony to the effect that he was not hired as a result of his compensable injury." . . . . An unavailing work search, sufficiently extensive and intensive, by a permanently impaired worker such as the claimant in this case, may meet the statutory requirements for prima facie proof of connection with permanent physical limitation.

In affirming the deputy's conclusion that the claimant in the present case met the burden which § 440.15(3)(b)(2), as amended, imposes, we find that consideration was properly given to the fact that claimant's industrial injury displaced him from his employment; that the employer refused to rehire claimant; *and that claimant in good faith performed an extensive, but entirely unsuccessful, job search during which prospective employers were generally aware of claimant's physical condition.*" (Emphasis supplied)

In meeting his burden of proof, an employee must show a change in employment status due to the injury and an adequate good faith attempt to secure employment commensurate with his ability. *D.L. Amici Company v. Jackson,* 444 So.2d 978 (Fla. 1st DCA 1983), *pet. for rev. den.,* 451 So.2d 848. Once such proof is furnished by the employee, the burden shifts to the employer to prove the employee refused work or voluntarily limited his income.

As noted earlier, Genevish claimed to have extensively searched for jobs during 1983, yet he was not able to furnish one single instance where he actually applied for a job as a draftsman or as a job estimator and he failed to obtain employment because of his disability. *Couture Fash-*

*ions, Inc. v. Romay,* 461 So.2d 235 (Fla. 1st DCA 1984). This record is totally devoid of any evidence that any identified employer refused to hire him and that he was unsuccessful in spite of his extensive job search during the relevant period during which prospective employers were generally aware of his physical condition. See *City of Clermont v. Rumph,* supra.

While there is hardly any doubt that his disability is permanent, albeit partial, and because of his injury he is no longer able to work in his previous trade, i.e. carpentry, painting or sandblasting, it is equally clear that he was able to work as a draftsman or as a job estimator during the spring of 1983. Based on this record, this Court is satisfied that instead of earnestly seeking employment during 1983, he preferred to construct a house for his daughter. There is nothing in this record which would assist this Court in determining how much monies were realized from this venture and while it might have been substantially less than he could have earned in the open market, ought that it appears it also might have been substantially more.

Based on the foregoing, this Court is satisfied that Genevish's claim can be allowed only for the following items in the following amounts:

(1) Temporary partial benefits for the period of November 12, 1982 up to November 22, 1982 in the amount of $320.00.

(2) Wage loss for the period of January 1, 1984 through February 28, 1984 in the amount of $1,135.97.

(3) Wage loss for the period of March 1, 1984 through October 31, 1985 in the amount of $9,359.47.

In addition, his claim for medical bills shall be allowed in the amount of $85.75, $50.00, $70.00 and $252.00 for the bill of Dr. Schulak whose claim shall be reduced by the amount of dividend to be paid to Genevish on this item. In addition, the claim of Genevish for reimbursement of vocational expenses is proper and should be allowed in the amount of $1,211.92.

This leaves for consideration the claim of Genevish for interest, costs and attorneys fees. This claim is based on the contention that the Debtor handled the claim of Genevish by miscalculating his average weekly earnings; by seeking protection of Chapter 11 in this Court; and by challenging his claim in this Court. § 440.-20(9) and § 440.34(3) of Florida Statutes mandates an allowance of interest and costs to the prevailing injured employee. Based on this, it is clear that the allowed claim of Genevish must include costs and this item shall be determined by a motion to tax costs to be filed by Genevish. However, interest cannot be allowed on his claim or any item which was due and unpaid on the date of the commencement of this case. This is so because § 502(b)(2) of the Bankruptcy Code does not permit the allowance of unmatured interest on unsecured claims.

§ 440.34 of the Florida Statutes authorizes allowance of attorney fees to the prevailing employee upon showing of bad faith of the employer. The statutory right of a debtor to seek relief in the bankruptcy court is a right granted by Congress. A right of a debtor to object to a claim filed in the case is equally well established and is contemplated by the Bankruptcy Code and is expressly authorized by Bankruptcy Rule 3007. To contend that the exercise of these rights by a debtor who seeks relief in the bankruptcy court amounts to bad faith would fly straight in the rehabilitative aim of the Chapter and would be clearly hostile to the well recognized policy aim of Congress in enacting the Bankruptcy Code. The charge of bad faith based on the Debtor's miscalculation of the average weekly wages of Genevish is equally ill founded, especially because this miscalculating which occurred was later corrected by the Debtor.

Counsel for the Debtor shall submit a separate order in accordance with the foregoing.